**UNITED STATES of America, Appellee,**

v.

**Richard P. MAURICE, Appellant.**

**No. 24117.**

United States Court of Appeals Ninth Circuit.

Sept. 17, 1969.

William L. Osterhoudt (argued), James F. Hewitt, Harry C. Singer, San Francisco, Cal., for appellant.

Paul G. Sloan (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., David P. Bancroft, Jerrold M. Ladar, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before ELY and CARTER, Circuit Judges, and SMITH, District Judge.*

ELY, Circuit Judge:

Maurice, together with a co-defendant named Spargo, was indicted for having unlawfully sold five hundred tablets of a drug commonly known as LSD. The sale was charged to have constituted an offense under 21 U.S.C. § 331(q) (2). Maurice and Spargo were jointly tried. The jury determined that they were guilty, and judgments of conviction followed. Only Maurice appeals.

In an excellent brief, counsel for Maurice hang their plea for reversal upon Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Our study convinces us that *Bruton* cannot be so far extended as to supply an adequately supportive foundation for the argument advanced in Maurice's behalf; hence, we affirm.

Viewing the evidence in the light most favorable to the Government, as we are required to do, we see the pertinent facts as follows: The first arrangements for the sale were made between a Government agent named Voorhees and a man by the name of Jay Eagen. Pursuant to a prearranged appointment, these two had met at San Francisco's International Airport. After a discussion between them, Eagen made a telephone call to Maurice and handed the telephone to Voorhees, who was present. Voorhees and Maurice discussed several matters pertaining to Voorhees' possible purchase of a quantity of LSD, including the price and Maurice's suggestion to Voorhees that if Eagen were eliminated from the transaction, a reduction in the price might be effected. Voorhees acquiesced, and Maurice requested that Voorhees telephone him at a later time in order to make final arrangements. Voorhees made the later call as requested, and Maurice told Voorhees that he, Maurice, would reach the airport in about one-half an hour and that he would be accompanied by another individual who would have the drug in his possession. In this same telephone conversation, Maurice told Voorhees that he would identify

---

* Hon. Russell E. Smith, United States District Judge, Missoula, Montana, sitting by designation.

himself with the name of "Rusty," described the dress which he would wear, and said that his companion would remain in the airport at such a distance from Maurice that, if signaled by Maurice, he might escape with the LSD which, according to Maurice, would then be in his companion's possession. These arrangements were implemented. Maurice and Spargo appeared at the airport, and an exchange followed with Spargo delivering the drug, in five plastic bags, to the Government's agent.

While Eagen was charged in the common indictment with having aided and abetted Maurice and Spargo in the commission of the offense, he was not present at the trial. It is represented that he was a fugitive. The defense offered by Maurice was to the effect that the Government's evidence did not sufficiently establish that he was a party to the sale and delivery. Spargo's defense, essentially, was that he was ignorant of the nature of the material which he delivered.

Spargo did not testify, but his attorney, in his opening statement at the beginning of the trial, made certain comments which are emphasized in connection with the contention that *Bruton* requires reversal. The whole of these particular comments are set forth in the margin.[1] Their effect, in sum, is that while Spargo was visiting Maurice at the latter's home, listening to phonograph records, Maurice asked Spargo to accompany him "to the airport to see somebody." Further, that when Spargo agreed and as they departed on Maurice's motorcycle, Maurice requested Spargo, the passenger, to carry "five bags" for

Maurice. This, according to the representation made by Spargo's attorney in his opening statement, was all that Spargo did.

Maurice's trial attorney did not object to the opening statement of Spargo's counsel, and we are now told that he did not do so because of his then expectation that Spargo would testify and that there would be an opportunity for cross-examination.

It is argued, adroitly, that Spargo's attorney, by the specified comments, effectively represented to the jury that Maurice, the appellant here, was the moving party in the transaction and the only reprehensible culprit. It is urged that we must assume, as undeniable fact, that Spargo's attorney necessarily received all of his information from Spargo and that, hence, the questioned comments constituted, in effect, a statement by Spargo himself which was intolerably prejudicial to his appealing co-defendant. *Compare* Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

■ There are at least three reasons why we must affirm. The first, and most important, is that *Bruton* is not controlling. In *Bruton*, the Supreme Court was confronted with a situation wherein the confession of a co-defendant in Bruton's trial was received as evidence. The confessor did not testify. The admitted confession gravely incriminated Bruton. It was held that Bruton had been deprived of his Sixth Amendment right of confrontation and that even though the jury had been instructed that it was to consider the confession only as to the

---

1. "From what we know of this case, we are certain that the only thing that the evidence is going to prove—the evidence of the government, because it is the only thing that can be proved because it is what happened—that is, Phillip Spargo, 20 years of age, had been friendly with the other gentleman, the redheaded gentleman, Richard Maurice, since they were together in junior high school, and one afternoon while they were at Mr. Maurice's house—I will call him Richard—they were listening to some records.

Richard, the red-haired gentleman, asked Phillip if he would accompany him and go to the airport to see somebody.

"Now when they went out to Richard's motorcycle—Mr. Maurice's motorcycle—Richard then asked Phillip to carry five bags for him while he drove the motorcycle. He asked Mr. Spargo to carry some bags for him and this Phillip Spargo did.

"When they arrived at the airport, Richard then asked Phillip to give him the bags back and this Phillip did."

confessing co-defendant, the infringement of Bruton's constitutional right was so severely prejudicial as to require that his conviction be vacated. Here, we have a far different case, more nearly fitting Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). Here, there was no confession by Spargo, his attorney did not represent to the jury that he was communicating any information received from Spargo, and the trial judge specifically, and more than once, instructed the jury that any comments made by counsel were not to be construed as evidence. The first of these admonitions occurred as Spargo's attorney was making his opening statement when, after an objection interposed by the prosecution upon an irrelevant point, the court commented: "I might state to the jurors now that opening statements of counsel are not evidence in the case. The prosecutor made an opening statement * * * and [the evidence] may or may not develop in the manner he indicates." [2]

█ Second, the emphasized comments of Spargo's attorney were not of such a nature, in their context, that we are required, or even justified, in basing our analysis upon the premise that the comments necessarily must be interpreted as statements which Spargo had made to his counsel. Finally, we are convinced that if error of constitutional dimension occurred, it was not so prejudicial to Maurice as to require the reversal of his conviction. Frazier v. Cupp, *supra*; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967). We recognize that it is the rare case when an appellate court may hold, under the test of *Chapman*, that error of constitutional dimension is harmless "beyond a reasonable doubt." *See* Wilson v. Anderson, 379 F.2d 330 (9th Cir. 1967), rev'd *sub nom.* Anderson v. Nelson, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968). This, however, is such a case. The incriminating evidence of the Government agent, the events which solidly corroborate it, and reasonable inferences which the jury may have permissibly applied in the Government's favor constitute, altogether, overwhelming evidence of guilt.[3]

Affirmed.

2. In the course of his instructions to the jury, the trial judge admonished:

"As I have heretofore stated, statements and arguments of counsel are not evidence in the case unless made as an admission or stipulated fact."

Maurice's attorney did not request an instruction specifically relating to the opening-statement remark of Spargo's lawyer, choosing to rest, as to the particular point, on his belated motion for mistrial.

3. It was not until the very last stage of the trial that Maurice's attorney, perhaps as an afterthought, apparently believed that the opening statement of Spargo's attorney had severely prejudiced his client. We have already observed that he did not object when the comments were made at the beginning of the trial. Expecting that Spargo would testify, this is understandable and excusable. Thereafter, however, the Government presented its case, at the conclusion of which, in an afternoon, the defense moved for an adjournment until the following day, Spargo's attorney, stating: " * * * I am not sure counsel and I have made any decisions with regard to what case we wish to present at this time *if any*." (Emphasis supplied.) Surely this must have alerted Maurice's attorney that Spargo might not testify, yet he made no mention of the opening statement. Moreover, defense testimony was then offered on the following day, and it was not until after the court had conferred with counsel and proposed jury instructions were finally settled that Maurice's attorney made a motion for mistrial upon the basis of the opening-statement comments made at the trial's beginning. While we cannot presume to express an opinion as to strategic considerations which may have moved counsel, it is difficult to conceive that he, throughout the proceedings and for so many hours, could have always remained unmindful of error which is now claimed to have been so devastatingly prejudicial.