**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lubomir PEICHEV, Defendant-
Appellant.**

No. 73-2195.

United States Court of Appeals,
Ninth Circuit.

June 21, 1974.

Certiorari Denied Oct. 29, 1974.
See 95 S.Ct. 229.

James F. Hewitt, Federal Public Defender (argued), John W. Keker, Asst. Federal Public Defender, San Francisco, Cal., for defendant-appellant.

Jerry K. Cimmet, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

Before DUNIWAY and WALLACE, Circuit Judges, and EAST,* District Judge.

OPINION

WALLACE, Circuit Judge:

The grand jury indicted Peichev on three counts: Aiding and abetting aircraft piracy [18 U.S.C. § 2; 49 U.S.C. § 1472(i)], conspiracy to commit aircraft piracy [18 U.S.C. § 371] and conspiracy to commit extortion by means of aircraft piracy [18 U.S.C. § 1951]. Peichev pleaded not guilty and was tried before a jury. After all of the evidence had been submitted, Peichev moved for a judgment of acquittal on count one on the ground that there was insufficient evidence, on count three on the ground that there was insufficient proof of an

---

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

effect on interstate commerce and on either count two or count three on the ground that only one conspiracy had been proven. The court denied all three motions and the jury returned a verdict of guilty on all counts. The court sentenced Peichev to life on count one and to 20 years on count three, both sentences to run concurrently. The court did not impose sentence on count two. Peichev appeals. While we do not reach count two, we affirm the remainder of the case on the basis that there was sufficient evidence of aiding and abetting under count one.

We review the evidence in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Over the weekend of June 16–19, 1972, Peichev and two other men, Michael Azmanoff and Dimitr Alexiev, traveled by car to Washington state, allegedly in search of gold. During this trip they also traveled to Vancouver and to Hope and Puntzi, two remote landing sites, both over 100 miles from Vancouver. While on this trip, plans were made for Azmanoff and Alexiev to hijack an airplane and to fly it to a remote airport in Canada. There, a fourth person would be waiting with a car ready to take the skyjackers to an apartment hide-out in the outskirts of Vancouver. Peichev was to rent a private plane and to meet them at an auxiliary landing strip in case the hijacked plane was unable to land at the preferred airport.

The three men returned to San Francisco and on July 1, 1972, met at the San Francisco International Airport with Illia Shishkoff who agreed to meet Peichev at noon on July 4, at the Vancouver Airport and to rent an apartment in the outskirts of the city. On July 3, Peichev withdrew $1,700 from his bank account and borrowed a gun under the guise of a need to protect himself while hunting for gold. Later the same day he met with Alexiev and Azmanoff at the San Francisco International Airport. They gave him a plane ticket to Seattle and told him to take a bus to Vancouver.

After meeting Shishkoff in Vancouver, Peichev rented two cars and traveled with Shishkoff to Hope airport, approximately 100 miles, and returned to Vancouver. The following day, July 5, Peichev rented a private plane and hired a pilot to fly him to Bella Coola and then to Anaheim Lake. While at Anaheim Lake, Peichev learned by radio that the hijack attempt had failed. He proceeded to Puntzi airstrip where he spent the night and then returned to Vancouver. In Vancouver he met Shishkoff and arranged for the return of the rental cars and then returned to San Francisco.

On July 5, the same day that Peichev flew to Puntzi airstrip, Azmanoff and Alexiev hijacked a Pacific Southwest Airline flight scheduled to travel from Sacramento to San Francisco. The hijackers demanded $800,000, parachutes and aircharts of Canada, Alaska and the Soviet Union. After the plane landed in San Francisco, an F.B.I. agent, posing as an international pilot, was allowed to board the plane. Gunfire erupted between the hijackers and F.B.I. agents and Azmanoff and Alexiev were killed. Azmanoff killed one passenger and wounded three others. The F.B.I. agents found on the bodies of the hijackers a map of British Columbia, Canada, and a small piece of note paper containing the map coordinates of Puntzi airstrip.

Peichev concedes that he rented a plane and flew to the Puntzi airstrip by prearrangement with Azmanoff and Alexiev, but contends that he was coerced to do so. His statements as reported by the other witnesses belie this contention. Shishkoff testified that when he met Peichev in Vancouver, Peichev was clearly in charge of directing the car rentals, surveying the Hope airport and directing where to hide the cars. Shishkoff also testified that Peichev, after meeting him at the Vancouver Airport following the failure of the hijacking plan, stated: "They are stupid.

. . . I'd planned everything so good. They are stupid. They ask for too much money."

Peichev argues that the evidence was insufficient to support his conviction of aiding and abetting aircraft piracy. Under count one, Peichev was charged with only aiding and abetting aircraft piracy, not additionally with counseling, commanding, inducing or procuring its commission as is also provided in 18 U.S.C. § 2. He concedes for the sake of argument that the evidence was sufficient to show a conspiracy, but argues that the government did not show that he aided and abetted in the perpetration of the crime.

At common law an abettor was one who was either actually or constructively present at the site of the crime and "who, with mens rea, either assist[ed] the perpetrator in the commission of the crime, [stood] by with intent (known to the perpetrator) to render aid if needed, or command[ed], counsel[ed] or otherwise encourage[d] the perpetrator to commit the crime." R. Perkins, Criminal Law 645 (1969) (footnotes omitted). *See* W. LaFave & A. Scott, Criminal Law 495 (1972). The distinction between an accessory before the fact and an abettor (a principal in the second degree) was the requirement that the abettor be either actually or constructively present at the site of the crime. R. Perkins at 658. A person was deemed constructively present "whenever he [was] cooperating with the perpetrator and '[was] so situated as to be able to aid him, with a view known to the other, to insure success in the accomplishment of the common purpose.'" R. Perkins at 660, *quoting* Skidmore v. State, 80 Neb. 698, 700, 115 N.W. 288, 289 (1908). The only proximity required was that the person be close enough to render aid as needed. Rex v. Soares, 168 Eng.Rep. 664 (1802).

Modern courts in construing 18 U.S.C. § 2 have generally followed the common law principles, but have emphasized the requirement that the person actively participate in the criminal venture. The Supreme Court defined the elements of aiding and abetting in Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S. Ct. 766, 770, 93 L.Ed. 919 (1949), as follows:

> In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." L. Hand, J., in United States v. Peoni, 2 Cir., 100 F.2d 401, 402.

Subsequently, the Court in United States v. Williams, 341 U.S. 58, 64, 71 S.Ct. 595, 599, 95 L.Ed. 747 (1951), stated: "Aiding and abetting means to assist the perpetrator of the crime."

Following the guidelines set forth by the Supreme Court, the courts of appeals have liberally construed the requirement that the abettor be constructively present at the site of the crime. In Tarkington v. United States, 194 F.2d 63 (4th Cir. 1952), the court affirmed a conviction on a plea of guilty where the defendant had waited in a get-away car parked in the woods, after helping his companions plan a robbery and after supplying them with a rope, pistols and a bag. His companions were captured before they reached the rendezvous. The defendant was arrested after allegedly hunting squirrels in the woods.

In United States v. Burkeen, 350 F.2d 261 (6th Cir.), cert. denied, 382 U.S. 966, 86 S.Ct. 457, 15 L.Ed.2d 369 (1965), the court affirmed the conviction of a defendant who by prearrangement had met the bank robbers on a lonely country road with a second get-away car. The court concluded:

> [The defendant] met the bank robbers by plan and . . . he knew he was meeting them to facilitate their escape, after a bank robbery. This would constitute aiding and abetting the perpetration of the robbery.

350 F.2d at 266.

In United States v. Harris, 140 U.S. App.D.C. 270, 435 F.2d 74 (1970), cert.

denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971), the court affirmed the conviction of a defendant for aiding and abetting the robbery of the company where he worked. The defendant did not participate in the actual commission of the crime since he was at work at a different part of the building during the time. But the court found that a jury could have inferred that he had participated in the planning and aided by allowing the perpetrators to use his gun, car and apartment. 435 F.2d at 88–89.

Similarly, in Asher v. United States, 394 F.2d 424 (9th Cir. 1968), we affirmed the conviction of an off-duty policeman for aiding and abetting the commission of a bank robbery although during the actual perpetration, the defendant had been at several different places completing business unrelated to the robbery. We held that the defendant was guilty as an aider and abettor even though he had not been the moving party in the plan, but had acquiesced while making suggestions in the plan proposed by the other participants. In addition, he aided the perpetrator's escape from the site of the crime and participated in a plan to conceal his identity from the police.

■ On the authority of these cases we hold that a person is an aider and abettor under 18 U.S.C. § 2 if he actively assists in planning and preparing for the perpetration of the crime and assumes a station with the knowledge of the perpetrators where he may be able to assist either in the commission of the crime or in the escape immediately following the perpetration of the crime. Under this standard, the evidence was sufficient to show that Peichev was guilty of aiding and abetting. He trav-

eled to Canada with Azmanoff and Alexiev to look at the landing sites. He was involved in planning the crime and agreed to be a participant. He borrowed a gun and had it with him at the time he expected to become an active participant. He traveled to Canada, rented cars and an airplane to aid the perpetrators in their escape. He was en route to the airstrip planned for a possible rendezvous when he learned that the crime had failed. According to a plan, known to the perpetrators, he was positioning himself so as to assist their escape, an element essential to the successful completion of the crime. His substantial distance from the site of the hijacking is irrelevant so long as he was in a proximity where he could assist the successful completion of the crime. He was in a position to assist the escape from a jet airplane as much as the driver of a get-away car waiting outside of a bank that is being robbed. The fact that the criminal plot was foiled before he could be of assistance is immaterial; he completed his assignment with the expectation that it would result in the successful commission of the crime. We hold that there was ample evidence to support the jury verdict.

■ Under the concurrent sentence doctrine we need not reach Peichev's other claims of error. Benton v. Maryland, 395 U.S. 784, 791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); United States v. Moore, 452 F.2d 576 (9th Cir. 1971). However, as no sentence was imposed on count two and the record reflects no reason why none was imposed, count two should be dismissed. This case is remanded to the district court for proper disposition of count two.

Affirmed in part; remanded in part.