**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Rajeh KAZNI, Defendant-Appellant.**

**No. 76–2150.**

United States Court of Appeals, Ninth Circuit.

June 5, 1978.

David F. Stobaugh (argued), of Bendich, Stobaugh & Strong, Seattle, Wash., for defendant-appellant.

Richard R. Romero, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before TUTTLE*, GOODWIN and SNEED, Circuit Judges.

TUTTLE, Circuit Judge:

On August 14, 1975, Rajeh Kazni and Roberto Durand Wayar were indicted for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).[1] Durand pleaded guilty. Kazni, the appellant here, waived his right to a jury and proceeded to trial before the court. He was convicted and sentenced to a term of 8 years in prison. On appeal, Kazni contends he did not receive effective assistance of counsel at his trial and that the introduction of certain alleged hearsay evidence deprived him of his Sixth Amendment right of confrontation.[2] We affirm.

---

* Honorable Elbert P. Tuttle, Senior Circuit Judge, Fifth Circuit, sitting by designation.

1. The statute provides in pertinent part:
   Except as authorized by this subchapter, it shall be unlawful for any person knowingly and intentionally . . . to . . . possess with intent to . . . distribute . . a controlled substance.
   21 U.S.C. § 841(a)(1). Schedule II(a)(4) of 21 U.S.C. § 812(c) lists cocaine as a controlled substance.

2. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . ., and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence. U.S.Const. amend. VI.

During the spring of 1975, one Walter Souto, while operating as a DEA informant in Argentina, South America, met and gained the confidence of Jorge Exeni, the appellant's cousin, and the Durand brothers, Roberto, Sergio and Joaquin. Souto told the Argentinians he was involved in the narcotics trade and that he had a buyer in Los Angeles. After learning that Exeni and Sergio Durand had plans to transport some 11 kilos of cocaine to the United States, Souto agreed to assist in the reprocessing[3] and ultimate sale of the narcotics.

Souto planned to fly from Argentina to Los Angeles on August 7, 1975. Prior to Souto's departure, Exeni called appellant in Los Angeles. At trial Souto testified, over objection, as to what Exeni said after the phone conversation with appellant:

Q: What did he tell you?

A: Well, he told me that, in fact, he was worried about some money getting to Durand for this operation. And he also wanted me to get in touch with his cousin in order to sell the stuff and get his money covered by warranty by his cousin Rajeh.

Q: Did he say what his cousin had told him on the phone call?

A: Yeah. He said not to worry about the money. He has located Durand here in Los Angeles and he was safe covering the money. . . .

In addition, Exeni wrote two letters in Souto's presence. Souto was instructed to deliver one of the letters, which was written in Arabic, to appellant. At trial, appellant interpreted the letter as follows:

My dear Rajeh, the one who handled this letter is a close friend of mine and he will tell you about what is happened between one and Durand brother and how much they should pay me, how much they owe me, something like that. And this man he could sell everything they got and have some people they buy it and give him cash. If they do want agree with him, they should send telegram to me and let me know and I will go there myself. And whenever—this man when he does everything, he should pay me half the profit and nothing else. With peace or your cousin forever, your cousin Jorge Exeni. The end of the letter he say you shouldn't do nothing and don't tell Durand, you know, about everything. I am afraid they are not going to pay me.[4]

The envelope containing this letter bore appellant's name and phone number.

Upon his arrival in Los Angeles, Souto checked into a motel and attempted to make contact with appellant. Souto finally reached appellant by telephone on Sunday, August 10, 1975, and informed him that "I [am the] person mentioned by [Exeni] by telephone." Appellant replied that he had been "waiting" and asked, "you want to meet Durand now?". Souto opted to meet only with appellant. After appellant arrived at the motel, Souto produced the Arabic letter, which appellant read and threw away. At trial Souto testified about appellant's reaction to the letter:

[H]e mentioned there was no problem about his cousin's money because he was

---

**3.** Because of its particular chemical content, the cocaine had to be reprocessed before sale. Sergio Durand initially intended to go to Los Angeles to handle the reprocessing. He was unable to make the journey because he was, at the time of Souto's departure, being pursued by the South American authorities.

**4.** The interpretation offered by the government's expert witness, Raymond G. Cousa, differed in some respects from appellant's interpretation. Cousa, who testified without objection, interpreted the letter as follows:

Dear Rageh, the holder of this letter is a friend of mine. As I told you, he will tell you all that we went through between me and the

kids, Wayar and his brother. He will tell you to do the sale of all the merchandise that they have because of people to buy it and to pay for it in cash. And if they don't want to I can't leave if he sends me a telegram. And he knows how to [send] it. If he made the sale I must get half the profit. Nothing else. And he knows all what is about it if you ask him. And give them to your cousin Rageh Kazni and ask him what you must do not let him know where are they because I am scared from not getting paid.

On cross-examination, Cousa conceded that the letter was "not clear" and that his initial interpretation might change after additional readings of the letter.

taken care of it. And also he mentioned that it was—he wasn't afraid of losing the money because he was able to solve the problem by getting someone to kill Durand if he didn't want to pay. . .

After the letter had been delivered and read, appellant and Souto conversed about Exeni's "business." Souto told appellant that he was involved in a cocaine operation with Exeni and that Roberto Durand owed Exeni $10,000 from a prior cocaine deal. Appellant testified with respect to what else Souto said during this conversation:

A: And he [Souto] is here to sell the coke. And the way he put it like he is going to screw Roberto and take the money and go back to Argentina and for me I am not supposed to tell Robert anything, leave everything for him. Just locate Robert for him.

Q: So you are to help out Exeni through [Souto], right?

A: Yes.

Finally, appellant mentioned to Souto that he knew Durand had some cocaine and that "the quality of the stuff wasn't very good."[5]

Later in the day, Souto and appellant met at appellant's apartment and discussed "the quality of the dope." Appellant showed Souto a quantity of cocaine previously obtained from Durand and stated that he planned to purchase part of Durand's cocaine to sell himself. The two finally were joined by Roberto Durand, and they all discussed how to "remake" the cocaine. Appellant conceded at trial that during this conversation he agreed to obtain several glass jars needed for reprocessing.[6] In addition, appellant volunteered to obtain a secluded location for use during the second stage of the process.

The next day, August 11, Souto, Durand and appellant met for lunch and discussed their respective roles in the reprocessing operation. Souto was to provide the necessary chemicals. Appellant agreed to pay for half of the chemicals, to obtain the glass jars and to secure a location for phase two of the operation. Durand was to supply the cocaine and "work on the chemistry." Souto informed appellant and Durand later that day that he would fly to San Diego to obtain the chemicals.

A portion of the chemicals arrived on Thursday, August 14.[7] Souto, Durand and appellant met at Souto's motel. The chemicals were loaded into Durand's vehicle, and the three men proceeded to Durand's apartment. DEA agents on surveillance at Durand's apartment testified that appellant helped transport the chemicals into the apartment. The unloading required several trips between the apartment and the car. After a brief absence, Durand returned with the cocaine and began the first phase of reprocessing. At this point Souto and appellant left the apartment in appellant's car. Appellant had agreed to drive Souto back to the motel for the purpose of obtaining "filter paper" needed for the reprocessing. Shortly thereafter appellant and Durand were arrested by DEA agents.

The first issue on appeal involves appellant's claim that he did not receive effective assistance of counsel at his trial. It is argued that, among other things, trial counsel presented a "legally and factually baseless" defense, failed to object to damaging inadmissible evidence, erroneously advised appellant on clear points of law, and asked pointless questions the answers to which served only to incriminate appellant. Appellant did not bring these matters to the attention of the district court either during the course of trial or on a motion for a new trial. And, rather than seek collateral re-

**5.** During his trial testimony, appellant stated that he first became aware of the fact Durand had a large quantity of cocaine to sell on Monday, August 11. At any rate, the record shows that appellant knew of Durand's criminal activity at least three days before his arrest.

**6.** Two such jars were seized at the time of Durand's arrest. Appellant's fingerprints were found on both jars and on the balance scale used by Durand to weigh the cocaine.

**7.** Pursuant to a prearranged plan, DEA agent Hinojosa delivered the chemicals, posing as Souto's San Diego supplier.

lief, appellant opted to take a direct appeal from his conviction. Appellant therefore does not complain of any district court rulings on the contentions pressed here.

■ Claims of ineffective assistance of counsel normally are raised for the first time in collateral proceedings under 28 U.S.C. § 2255. *United States v. Parr-Pla*, 549 F.2d 660, 663 (9th Cir. 1977) (per curiam); *United States v. Johnson*, 434 F.2d 827, 830 n.2 (9th Cir. 1970). This is so because normally such a claim cannot be advanced without the development of facts outside the original record. *United States v. Sullivan*, 435 F.2d 650, 652 n.1 (9th Cir. 1970) (per curiam), *cert. denied*, 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971), *quoting United States v. Porter*, 431 F.2d 7, 10–11 (9th Cir. 1970). Nevertheless, this court has recognized that

> if it was evident during the trial that defendant's legal representation was so inadequate as obviously to deny him his Sixth Amendment right to counsel, or to deny him a fair trial in the due process sense, the failure of the trial court to take note sua sponte of the problem might constitute plain error which may be considered on direct appeal.

*United States v. Porter*, 431 F.2d at 11; *accord, United States v. Sullivan*, 435 F.2d at 652; *United States v. Johnson*, 434 F.2d at 830–31; *see United States v. Parr-Pla*, 549 F.2d at 663; *United States v. Lucero*, 443 F.2d 64, 65 (9th Cir. 1971) (per curiam).

■ The trial record on this direct appeal provides no basis for ruling upon appellant's conclusionary allegations, and we decline to reach the merits of his Sixth Amendment claim. Suffice it to say there is nothing in the record before us to indicate that appellant's legal representation was so grossly inadequate that the district court's failure to notice it sua sponte was plain error. If there are matters of fact outside the record which would support appellant's allegations,

they may be presented in a proceeding under 28 U.S.C. § 2255.

■ It is also argued that the Arabic letter and Souto's testimonial account of Exeni's remarks after Exeni's phone conversation with appellant, p. 240 *supra*, were hearsay and that the introduction and consideration of such evidence deprived appellant of his Sixth Amendment right of confrontation. *See generally California v. Green*, 399 U.S. 149, 155–73, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Pointer v. Texas*, 380 U.S. 400, 403–407, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Assuming, *arguendo*, that the challenged evidence should have been excluded and that the error in its admission assumes constitutional significance, we conclude the error was harmless beyond a reasonable doubt. *See Brown v. United States*, 411 U.S. 223, 231–32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Milton v. Wainwright*, 407 U.S. 371, 372–78, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Schneble v. Florida*, 405 U.S. 427, 430–32, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Chapman v. California*, 386 U.S. 18, 21–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Masterson*, 529 F.2d 30, 31 (9th Cir.), *cert. denied*, 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976); *United States v. Lewis*, 465 F.2d 959, 962 (9th Cir. 1972).

Appellant was tried for possession of cocaine with intent to distribute. Under 18 U.S.C. § 2(a) he was properly "punished" as a principal if the evidence showed beyond a reasonable doubt that he aided and abetted Durand's violation of the narcotics statute charged in the indictment.[8] According to the Supreme Court,

> [i]n order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, [and] that he seek by his action to make it succeed."

---

**8.** "It is unnecessary that an indictment for a crime allege a violation of [18 U.S.C. § 2] to lay a foundation for a conviction based on aiding and abetting." *Wood v. United States*, 405 F.2d 423, 425 (9th Cir.), *cert. denied*, 395 U.S. 912, 89 S.Ct. 1756, 23 L.Ed.2d 224 (1969); *ac-*

*cord, United States v. Sannciandro*, 434 F.2d 321, 324 (9th Cir. 1970); *Grant v. United States*, 291 F.2d 746, 749 (9th Cir. 1961), *cert. denied*, 368 U.S. 999, 82 S.Ct. 627, 7 L.Ed.2d 537 (1962).

*Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949) (citation omitted); see *United States v. Williams,* 341 U.S. 58, 64, 71 S.Ct. 595, 599, 95 L.Ed. 747 (1951) ("Aiding and abetting means to assist the perpetrator of the crime."); *United States v. Peichev,* 500 F.2d 917, 919–20 (9th Cir.), *cert. denied,* 419 U.S. 966, 95 S.Ct. 229, 42 L.Ed.2d 182 (1974); *Grant v. United States,* 291 F.2d 746, 748–49 (9th Cir. 1961), *cert. denied,* 368 U.S. 999, 82 S.Ct. 627, 7 L.Ed.2d 537 (1962). It is of no moment that the government's proof did not show that appellant knew all of the particular details of the crime. *United States v. Lane,* 514 F.2d 22, 27 (9th Cir. 1975); *United States v. Short,* 493 F.2d 1170, 1172 (9th Cir.), *cert. denied,* 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974). "It is enough that he acted with criminal intent and design to assist the perpetrators of the crime." *United States v. Lane,* 514 F.2d at 27.

Based upon our independent review of the entire record and our understanding of the principles outlined above, we think the outcome of this aspect of the appeal is clear. The independent and largely uncontroverted evidence of appellant's guilt was so overwhelming, and the alleged prejudicial effect of the challenged evidence so insignificant by comparison, we are able to conclude beyond any reasonable doubt that the trial court would have reached the same verdict without considering the alleged hearsay. *See United States v. Faulkner,* 447 F.2d 869, 872 (9th Cir. 1971), *cert. denied,* 405 U.S. 926, 92 S.Ct. 974, 30 L.Ed.2d 798 (1972); *United States v. Mendoza,* 441 F.2d 1107, 1108 (9th Cir. 1971) (per curiam); *United States v. Maurice,* 416 F.2d 234, 237 (9th Cir. 1969). Accordingly, the judgment is

AFFIRMED.