**UNITED STATES of America,**
**Appellee,**

v.

**Aubrey Kenneth PORTER, Appellant.**

**No. 23446.**

United States Court of Appeals,
Ninth Circuit.

Aug. 12, 1970.

Certiorari Denied Dec. 14, 1970.
See 91 S.Ct. 360.

Samuel H. Vaught (argued), San Jose, Cal., for appellant.

Donald Curnon (argued), Asst. U. S. Atty., John W. Hornbeck, Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Chief, Criminal Division, Los Angeles, Cal., for appellee.

Before HAMLEY, HAMLIN and WRIGHT, Circuit Judges.

HAMLEY, Circuit Judge:

Following a jury trial, Aubrey Kenneth Porter was found guilty of robbing a federally-insured bank in violation of 18 U.S.C. § 2113(a). On this appeal from the conviction, defendant's principal argument brings into question the instruction the trial court gave with regard to defendant's insanity defense.

Defendant's trial took place prior to our in banc decision in Wade v. United States, 426 F.2d 64 (9th Cir. 1970), where we adopted, in part, the American Law Institute insanity test as set forth in Model Penal Code § 4.01 (Final Draft 1962). Consequently, the trial court instructed the jury in terms generally analogous to the modified M'Naghten standard that controlled in this circuit prior to Wade. See, e. g., Ramer v. United States, 390 F.2d 564 (9th Cir. 1968); Sauer v. United States, 241 F.2d 640 (9th Cir. 1957). Now, since Porter's appeal falls within the scope of Wade's limited retroactivity, he asserts that the trial court's instructions require a reversal.[1]

Our study of the record convinces us that, even under the Wade standard, defendant would not have made out a viable insanity defense. The four Government psychiatrists who testified all expressed the opinion that defendant's substantial mental difficulties developed *after* the commission of the crime. According to these witnesses, defendant's mental deterioration began to develop with his arrest the next morning when defendant came under the threat of a return to prison.

The Government experts stressed defendant's rational capabilities at the time of the crime, as evidenced by his use of a disguise, his awareness of possible alarm systems, and other factors suggesting mental alertness. These witnesses expressed, most emphatically, the opinion that defendant was sane at the time the crime was committed (e. g., "no reasonable doubt" of his sanity; defendant had "full control over what he was doing"). Thus the Government's evidence established, almost conclusively, that defendant would not have been able to prove

---

1. Defendant failed to meet the requirements of Fed.Rules Crim.P. 30 by objecting to the trial court's insanity instructions before the jury retired. Ordinarily this would mean that defendant would be entitled to reversal only if plain error could be shown. However, as we stated recently in United States v. Wanger, 426 F.2d 1360 (9th Cir. 1970):

"The appellant did not forfeit his rights under *Wade* by failing to object to jury instructions which applied the law as it was firmly established prior to *Wade* * * *."

that he lacked "substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." *See* Model Penal Code § 4.01 (Final Draft 1962).

Defendant offered no significant evidence to contradict the opinions of the Government psychiatrists as to when his mental illness developed or as to his mental balance at the time of the crime. Accordingly, we believe that the jury could not properly have acquitted him under our new insanity test, or under any other standard for that matter. It follows that the failure to instruct in terms of the new Ninth Circuit insanity test was harmless error. *See* Maxwell v. United States, 368 F.2d 735 (9th Cir. 1966).

■ Defendant asserts that an informal observation of the trial court made to the jury at the close of the insanity instruction, quoted in the margin, left the jury free to define insanity "according to their subjective belief." [2]

While the quoted observation was neither necessary nor helpful to the jury, we do not believe it was prejudicial.

■ Defendant also contends that the trial court erred in failing to include, in its insanity instruction, the last paragraph of the *Mathes & Devitt* pattern instruction on insanity. This paragraph covers the burden of producing evidence.[3]

The trial court in fact gave no specific instruction on the absence of a duty on the part of the defendant to produce witnesses or evidence on insanity or on any other specific issue. However, we believe that the court's repeated instructions on the Government's burden to prove every element, including sanity, beyond a reasonable doubt adequately conveyed to the jury the thought that defendant had no burden to produce evidence as to his insanity. *See* Sullivan v. United States, 414 F.2d 714, 716 et seq. (9th Cir. 1969).

In addition to giving a general insanity instruction, the trial court gave the following instruction on the intent element of the offense for which defendant was charged:

"With respect to crimes such as charged in this case, specific intent must be proved before there can be a conviction.

"Specific intent, as the term itself suggests, requires more than a mere general intent to engage in certain conduct.

"A person who knowingly does an act which the law forbids, or knowingly fails to do an act which the law requires, intending with bad purpose either to disobey or to disregard the law, may be found to act with specific intent."

Defendant argues that the trial court committed plain error when, despite its promise to do so, it failed to instruct the jury further that even if they should find sanity beyond a reasonable doubt, they must also consider all the evidence to determine whether the mind of the accused was capable of forming specific intent.[4] Stated otherwise, defendant con-

2. The trial court's aside to the jury was:
"In other words, very simply stated—you know, lawyers and judges have to take words, words, words to explain something. That has come down historically and has become an antiquated thing with lawyers and judges, and I don't know how we will ever change.
"Just put in very simple words, a person who is insane at the time he commits an act is just not held responsible."

3. The paragraph reads:
"In considering the mental state of the accused, the jury will always bear in mind that the law never imposes

upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence."
W. Mathes & E. Devitt, Federal Jury Practice and Instructions, § 10.14 at 112–113 (1968 Supp.).

4. The promised but omitted instruction was § 10.15 of *Mathes & Devitt*, note 3, *supra*.
As in the case of the trial court's insanity instruction, defendant failed to make a timely objection on this point. However, we nevertheless reach the merits, since in our opinion, had the trial court failed to instruct the jury correctly on the intent element, plain error

tends that a "diminished capacity" defense applies to the charge against him, since a specific intent was required, and that he was entitled to the *Mathes & Devitt* instruction on that defense.

Defendant was charged and convicted under the first paragraph of 18 U.S.C. § 2113(a), which requires proof of either force and violence, or intimidation. The first paragraph does not require, as does the second, "intent to commit * * * any felony * * *."

Defendant does not assert that the evidence was insufficient as to the necessary elements of the paragraph under which he was charged. Where a person has the mental capacity for criminal responsibility, proof that he took property of another by force or violence, or by intimidation, necessarily establishes the required criminal intent, whether or not characterized as "specific" intent.[5] Here the trial court not only gave a complete instruction dealing with the insanity defense, but also a separate windfall instruction on "specific" intent. While the court did not instruct on the concept of

"diminished capacity," this was not required under the decisions of this court.[6]

Contrary to defendant's assertion, the instructions did not, in our opinion, make it seem that the only state of mind required was sanity. When considered together with the insanity defense instructions, the specific intent instruction informed the jury that a mere finding of sanity was not sufficient to warrant a guilty verdict.[7]

Finally, defendant argues that his trial counsel failed to render reasonably effective assistance when his total conduct is considered. He cites nine examples of action or inaction on the part of his trial attorney, as demonstrating the inadequacy of his representation.

Defendant did not bring this matter to the attention of the trial court and seek a ruling thereon, either during the course of the trial or on motion for a new trial. Thus he does not complain of any trial court ruling in this regard. Arguments of this kind are ordinarily advanced for the first time in collateral proceedings under 28 U.S.C. § 2255, be-

would be indicated. *See, e. g.,* United States v. Rybicki, 403 F.2d 599, 602–604 (6th Cir. 1968) ; Liles v. United States, 129 U.S.App.D.C. 268, 393 F.2d 669, 670 (1967). *Cf.* Powell v. United States, 347 F.2d 156, 158 (9th Cir. 1965).

5. Defendant cites three cases for the proposition that specific intent is an element of the offense under 18 U.S.C. § 2113 (a). None defines what specific intent means in this context, and two did not even deal with the statutory language under which defendant was indicted. The first, Nagell v. United States, 392 F.2d 934, 938 (5th Cir. 1968), dealt with the second paragraph of section 2113(a), a crime for which defendant was not charged in this case. *See also* Wright v. United States, 389 F.2d 996, 1000 (8th Cir. 1968). The second interpreted a District of Columbia robbery statute, not the act in question. Byrd v. United States, 119 U.S.App.D.C. 360, 342 F.2d 939, 940–941 (1965). And, although the third case makes the assumption that specific intent is an element under the first paragraph of section 2113(a), there is no discussion of the issue. Caples v. United States, 391 F.2d 1018, 1022–1023 (5th Cir. 1968).

6. The Fourth Circuit apparently recognizes such a defense, Rhodes v. United States, 282 F.2d 59, 60–61 and accompanying notes (4th Cir. 1960), as does California. *See* authorities cited in Brubaker v. Dickson, 310 F.2d 30, 38 (9th Cir. 1962). *Cf.* Kane v. United States, 399 F.2d 730, 736 (9th Cir. 1968).

7. The trial judge also pointed this out in one of his many colloquies with defense counsel before the jury during the course of the trial. Defense counsel put the following question to one of the Government's psychiatrists:

"Doctor, from what you know about * * * his mental illness subsequent to the alleged offense * * * would you say that if the defendant did rob that bank that he intended a bad purpose?"

At this point the trial judge stated in ruling upon the Government's objection to the question:

"What is the purpose of the question, counsel? I don't understand you. That is the issue for the jury to determine, if they determine he is sane. They then also have to determine what his purpose was."

cause they usually require the development of facts outside the trial record.

Nevertheless, if it was evident during the trial that defendant's legal representation was so inadequate as obviously to deny him his Sixth Amendment right to counsel, or to deny him a fair trial in the due process sense, the failure of the trial court to take note sua sponte of the problem might constitute plain error which may be considered on direct appeal. Moreover, even absent a plain-error factor, this court has, on occasion, examined such a contention on the merits in an appeal from a conviction, even where no trial court ruling is complained of. *See* Bouchard v. United States, 344 F.2d 872, 874–875 (9th Cir. 1965); Reid v. United States, 334 F.2d 915, 919 (9th Cir. 1964).

We have accordingly elected to examine this contention on the merits and are convinced that defendant's legal representation at trial was adequate in the constitutional sense.

Affirmed.