**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Horace Eldin LEWIS,
Defendant-Appellant.**

**No. 79–1368.**

United States Court of Appeals,
Tenth Circuit.

Argued May 5, 1980.
Decided Aug. 22, 1980.

R. Raymond Twohig, Jr., Asst. Federal Public Defender, Albuquerque, N. M., for defendant-appellant.

Thomas S. Udall, Asst. U. S. Atty., Albuquerque, N. M. (R. E. Thompson, U. S. Atty., Albuquerque, N. M., with him on brief), for plaintiff-appellee.

Before McKAY, BREITENSTEIN and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal by Horace Eldin Lewis from a conviction by jury on a charge of entering a federally insured bank with intent to commit bank robbery, in violation of 18 U.S.C. § 2113(a). The issues on appeal are (1) whether the court properly instructed the jury on the specific intent required to support conviction, and (2) whether Lewis was entitled to a necessity defense.

The facts in this case are quite unusual. The evidence indicated that Lewis was an alcoholic who had previously served time in federal prisons. Unable to cope with his drinking problem and other facets of his life outside prison, he decided to rob a federally insured bank, ostensibly so that he would be caught and returned to prison where he hoped to have some status, would be kept away from alcohol and would have time to pursue his writing hobby.

On November 27, 1978, Lewis called a detective in the Hobbs, New Mexico, police department and told him of his plans. This detective and an FBI agent visited Lewis, attempting to dissuade him. During the next approximately forty-eight hours Lewis was talked to not only by these two, but also by various others including the police chief, undercover agents of the police department and a psychologist. Lewis discussed with these individuals the dangers involved in robbing a bank, including the possibility of a heart attack by someone in the bank or miscarriage by a pregnant teller. Lewis even allowed his picture to be taken to be given to the city's banks for identification. According to the testimony, at least once he appeared to have been dissuaded from the proposed robbery and, at other times, appeared to be uncertain whether he would commit the robbery, and, if so, which bank he would enter.

Two days after his first telephone call, however, he entered New Mexico Bank and Trust Company of Hobbs, presented a note

to a bank teller reading, "This is a bank robbery. Put the money in the bank bag and keep your foot off the button." Pursuant to this demand the teller placed approximately $3,113 in a bank bag and turned it over to Lewis, who was apprehended in the outer bank foyer by officers who had him under surveillance. He was convicted and sentenced to ten years in prison for violation of 18 U.S.C. § 2113(a).

Lewis now attacks his conviction principally by focusing upon the intent required to commit this crime. An instruction tendered by the defense and rejected by the court would have told the jury that Lewis, when he entered the bank, must have had "the specific intent to steal," "specific intent to take money from the bank and carry it away," and "specific intent to take such money by force or violence or by means of intimidation." Instead, the court instructed the jury that upon entering the bank Lewis must have had "the specific intent to commit in the bank a felony affecting the bank, to-wit: The taking by intimidation and from the presence of an employee of the bank money belonging to and in the care, custody, control, management and possession of the bank," and that he did such act willfully. The court also instructed the jury, *inter alia*, that "[s]pecific intent, as the term itself suggests, requires more than a mere general intent to engage in certain conduct," "specific intent must be proved beyond reasonable doubt before there can be a conviction," and "[i]ntent (or lack of intent) may be proved by circumstantial evidence, . . . can rarely be established by other means . . . [since] there can be no eyewitness account of the state of mind with which the acts were done (or omitted). But what a defendant does (or fails to do) may indicate intent or lack of intent, to commit the offense charged." The court declared that all statements made or acts done or omitted by the defendant could be considered to aid the determination of defendant's state of mind.

■ Defendant asserts that the evidence showing his declared intent to commit the robbery in order to be caught and placed in prison demonstrates that he had no intent to separate the bank from its money for anything more than a very short time. From this he argues he could not have had the specific intent contemplated by the Bank Robbery Act. He points to his calling of the police concerning the proposed robbery, their discussions, and his knowledge that he was under surveillance. He declares he intended to turn himself and the money over immediately to the FBI agent officing in the same building in which the bank was located, citing as evidence that he asked the teller for directions to the FBI office.

All of these facts were presented to the jury, and the only question is whether the instructions were adequate to present defendant's theory of the case to the jury. We think they were. We recognize that the court should be especially careful in its instructions on intent when there is such bizarre behavior as exhibited here. *See Nagell v. United States*, 392 F.2d 934, 938 (5th Cir. 1968). But we perceive no significant differences between the tendered instruction and the instructions given by the court to the jury.

What Lewis really seems to argue is that proof of his intent to be arrested and to turn over the money to the FBI to be given back to the bank is so overwhelming that no reasonable jury could convict him of the crime. We do not agree. There were some conflicts in the evidence from which the jury could find that, unlikely as the possibility of avoidance of arrest might be, Lewis hoped to escape and spend the money. There was testimony to the effect that Lewis had gone past the stairway leading to the FBI agent's office, and when arrested he was in a position to exit by a door of the bank that was not covered by the police. The FBI agent testified Lewis once told him that he asked the teller about the FBI office location to throw the police off his trail and enable him to get away with the money. Another teller indicated overhearing defendant say something during the robbery about using the money to buy a cattle ranch. Lewis asked an employee in

the sandwich shop where he bought an ice cream cone immediately before entering the bank if the store had a back door—from which it might be inferred he wanted to avoid the police who were watching him. The jury, charged with the duty to infer from conflicting evidence the defendant's intent, could have concluded that if Lewis was not arrested he would have kept the money and spent it. *See Van Nattan v. United States*, 357 F.2d 161 (10th Cir. 1966).

Assuming, however, that Lewis did intend to turn himself in after the robbery, did he still have the intent required by the statute? The second paragraph of section 2113(a) requires specific intent to commit a felony in a bank, here bank robbery. Felonious intent is not specifically incorporated into the offense of bank robbery under the first paragraph of section 2113(a), but we agree with *United States v. De Leo*, 422 F.2d 487, 491 (1st Cir.), *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970), that the offense is so "unambiguously dangerous to others that the requisite mental intent is necessarily implicit in that description."

We believe that an individual who enters a bank with the intention of taking money by intimidating employees of the bank, is answerable for the consequences of his actions, if he is mentally competent, even assuming his motive for committing the act was to be caught and returned to prison. The fact that the bank was to be deprived of the funds only temporarily does not change the result.

■ The second question raised by Lewis in his entitlement to a necessity defense. The court refused to allow a psychologist called as a defense witness to answer a hypothetical question concerning defendant's belief that this robbery was the only

way he could prevent inevitable and unavoidable harm to himself or to others caused by his alcoholism and drunk driving. Also, Lewis tendered an instruction to the effect that the jury might find the robbery was necessary and reasonable to protect himself and others,[1] which the court did not give.[2]

We reject the applicability of the defense of necessity asserted here, and with it the right to the instruction. The Supreme Court emphasized in *United States v. The Diana*, 7 Wall. (74 U.S.) 354, 19 L.Ed. 165 (1869), that for the necessity defense to be available the case must be one of "absolute and uncontrollable necessity; and this must be established beyond a reasonable doubt . . . . . Any rule less stringent than this would open the door to all sorts of fraud." 7 Wall. (74 U.S.) at 361, 19 L.Ed. at 166. This view was reiterated recently in a criminal case when the Supreme Court declared: "Under any definition of these defenses [duress and necessity] one principle remains constant: if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defense will fail." *United States v. Bailey*, 444 U.S. 394, 410, 100 S.Ct. 624, 634, 62 L.Ed.2d 575 (1980).

The defense of necessity does not arise from a "choice" of several sources of action; it is instead based on a real emergency. It may be asserted only by a defendant who was confronted with a crisis as a personal danger, a crisis that did not permit a selection from among several solutions, some of which would not have involved criminal acts. In the instant case there were several alternative courses of action, not involving bank robbery, to cure defendant's alcoholism and to prevent him from injuring him-

---

1. The tendered instruction read as follows:

   An act which would otherwise be a crime may be excused if the person accused can show that it was done only in order to avoid consequences which could not otherwise be avoided, and which, had they failed, would inflict upon him, or upon others whom he was bound to protect, inevitable or unavoidable evil; that no more was done than was

reasonably necessary for that purpose; and that the evil inflicted by it was not disproportionate to the evil avoided.

2. Although Lewis did not object to the failure to give this particular instruction, we assume the issue is properly before us. *See Bird City Equity Merc. Exch. v. United States*, 338 F.2d 790 (10th Cir. 1964).

self and others while driving an automobile. He has made no showing that meets the minimum standards for an instruction on this defense.

AFFIRMED.