**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Daniel DARBY, Defendant-Appellant.**

**No. 87–5150.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 1, 1988.
Decided Sept. 15, 1988.

Jay L. Lichtman, Los Angeles, Cal., for defendant-appellant.

Leslie A. Swain, Asst. U.S. Atty., Criminal Div., Los Angeles, Cal., for plaintiff-appellee.

Before HUG, TANG and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Daniel Darby appeals from his conviction for attempted bank robbery under the first paragraph of 18 U.S.C. § 2113(a) (1982). The district court had jurisdiction based on 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. The issues before us on appeal are (1) whether the court properly instructed the jury on the intent required to support a conviction under § 2113(a), and (2) whether expert psychiatric testimony corroborating Darby's testimony should have been admitted. For the reasons set forth below, we reverse Darby's conviction and remand to the district court.

## FACTS

On September 12, 1986, Daniel Darby took a bus from his low-income hotel on skid row to Hollywood. Darby exited the bus, took a piece of paper and a crumpled McDonald's bag out of a trash can, and wrote on the paper: "This is a stick up, put your money in this bag." He then entered Security Pacific Bank and stood in line, where he attracted the attention of customers and the security guard.

The security guard alerted the operations officer that there might be an attempted robbery and then stood behind Darby as he approached the teller's window. Darby placed the note on the counter. The security guard, thinking that Darby had a gun, grabbed his hand and asked what Darby was doing. Darby replied, "I'm not doing anything," and let himself be escorted to a corner of the bank where he said nothing further.

The defense theory at trial was that Darby did not actually intend to rob the bank, but instead intended to get arrested so that he might obtain the psychiatric care that he had been repeatedly denied in the previous months. Darby testified that he did not intend to take the bank's money and would have refused it if the teller had given the money. Darby voluntarily sought medical assistance and hospitalization for mental and emotional problems at the University of Southern California ("U.S.C.") Medical Center and three other hospitals or clinics in February and March of 1986. He attended four sessions with Dr. Foerster at the U.S.C. Psychiatric Clinic and requested hospitalization three of those times, but was refused because he was not suicidal. He returned to U.S.C. in May but was again refused hospitalization. That summer Darby was mugged and beaten, and suffered a fractured leg. Four days before the alleged robbery attempt, his leg cast was removed. Darby testified that at the time of the offense he was on pain medication, walked with difficulty, and was unable to run.

## STANDARD OF REVIEW

Jury instructions are reviewed for abuse of discretion and the adequacy of the entire charge must be evaluated in the context of the trial. *United States v. Frazin,* 780 F.2d 1461, 1468 (9th Cir.), *cert. denied,* 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986). We consider whether as a whole the instructions were misleading or inadequate to guide the jury's determination. *United States v. Washington,* 819 F.2d 221, 226 (9th Cir.1981).

The trial court has broad discretion to admit expert testimony, and we will sustain the court's action unless it is manifestly erroneous. *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 (9th Cir.1987).

## ANALYSIS

### 1. *Jury Instructions*

■ A conviction for attempted bank robbery under 18 U.S.C. § 2113(a)[1] requires the government to prove both " 'culpable intent' and 'conduct constituting a substantial step toward commission of the crime that is in pursuit of that intent.' " *United States v. Still*, 837 F.2d 871, 873 (9th Cir.1988) (quoting *United States v. Buffington*, 815 F.2d 1292, 1301 (9th Cir. 1987)); *see United States v. Snell*, 627 F.2d 186, 187 (9th Cir.1980), *cert. denied*, 450 U.S. 957, 101 S.Ct. 1416, 67 L.Ed.2d 382 (1981). "Culpable intent can be inferred from a particular defendant's conduct and from the surrounding circumstances." *Still*, 837 F.2d at 873; *Buffington*, 815 F.2d at 1302. A substantial step is "conduct that is strongly corroborative of the firmness of a defendant's criminal intent." *Buffington*, 815 F.2d at 1301; *see United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir.1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975).

The district court instructed the jury that the government must prove three elements in order to find the defendant guilty. First, the government must prove the act of attempting to take the bank's money; second, the act of attempt must be with force or violence or intimidation; and third, the act must be done knowingly. The jury was also instructed that, "An act is done knowingly if done voluntarily and intentionally and not because of mistake or accident or other innocent reason." The court refused the defendant's proposed jury instructions, which would have required the jury to find that Darby intended to steal the bank's money.

The district court, relying upon *United States v. Hartfield*, 513 F.2d 254 (9th Cir. 1975), premised its rulings throughout trial on the theory that the government need only prove that the defendant acted knowingly and voluntarily in order to convict under § 2113(a). In *Hartfield*, an attempted bank robbery case, we stated that § 2113(a) does not require specific intent. We found evidence of voluntary drug intoxication inadmissible to establish Hartfield's lack of capacity to form specific intent, although the evidence was ruled admissible on the issue of Hartfield's sanity at the time of the offense. *Id.* at 259; *see also United States v. Smith*, 638 F.2d 131, 132 (9th Cir.1981); *United States v. Burnim*, 576 F.2d 236, 237 (9th Cir.1978); *United States v. Hearst*, 563 F.2d 1331, 1337 (9th Cir.1977); *United States v. Lemon*, 550 F.2d 467, 470 n. 1 (9th Cir.1977); *United States v. Klare*, 545 F.2d 93, 94 (9th Cir. 1976) (all completed bank robbery cases).

■ However, in *Hartfield*, we relied upon *United States v. Porter*, 431 F.2d 7 (9th Cir.), *cert. denied*, 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970), to form our conclusions on the intent element. In *Porter*, a completed bank robbery case involving an insanity defense, we held that an instruction on diminished capacity was not necessary because the jury had been instructed that a mere finding of sanity was not sufficient to warrant a guilty verdict

---

1. 18 U.S.C. § 2113(a) provides:
    Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
    Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or

in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—
    Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

and had also been instructed that specific intent must be demonstrated. We said that conviction under the first paragraph of § 2113(a) does not require "intent to commit ... any felony." *Id.* at 10. However, we explained that "[w]here a person has the mental capacity for criminal responsibility, proof that he *took property of another* by force or violence, or by intimidation, necessarily establishes the required *criminal intent,* whether or not characterized as 'specific' intent." *Id.* Thus, in order to convict for bank robbery, the government must prove that the defendant *took* the property. This act of *taking* by force, violence, or intimidation is sufficient to constitute the crime of bank robbery. It is not necessary to prove an intent to steal. When the charge is one of *attempted* bank robbery, however, the transaction in question is at an earlier stage. There has not been a *taking* of the property. We are thus concerned with whether attempted bank robbery requires an *intent to take* the property. We agree with the dissent that it is not necessary to prove that the defendant *intended to steal,* but it is necessary to prove that he intended to take the property. In order to prove an attempt to commit a crime, the government must prove an intent to commit the acts that constitute the crime. Thus, in order to prove attempted bank robbery, it is necessary to prove that the defendant intended to take the property by force, violence or intimidation.

The district court ruled without the benefit of *United States v. Still,* 837 F.2d 871 (9th Cir.1988) and *United States v. Buffington,* 815 F.2d 1292 (9th Cir.1987), which clarify that a conviction for attempt requires proof not only that a defendant knowingly and voluntarily acted, but also that the defendant intended to take the money. In *Buffington,* we found that the evidence presented at trial was insufficient for a jury to find either the intent to rob a federal bank or conduct constituting a substantial step toward the commission of a robbery. *Buffington,* 815 F.2d at 1302. Although the government provided substantial evidence to establish the defendant's intent to rob, the *Buffington* court

found the evidence insufficient because the defendants were thwarted from entering the federal bank by a power outage, and therefore their intent to rob could have been directed against another nearby store or state bank. *Id.* In *Still,* we determined that the evidence was conclusive as to the defendant's intent, but was insufficient to meet the "substantial step" requirement. The defendant in *Still* admitted to the police that he intended to rob a bank. We found that these statements clearly established his unequivocal intent to rob the bank. "Therefore, the first aspect of an attempt, a culpable intent, was established beyond a reasonable doubt." *Still,* 837 F.2d at 874.

Thus, it is insufficient that Darby intended to intimidate the teller; to find him guilty he must also have intended to take the money. If Darby intended only to create a stir so that he would be arrested and get psychiatric care, then he did not commit attempted robbery. Darby testified that he did not intend to take the money and that he would not have taken the money even if the teller offered it. He testified that he was on medication, walked with difficulty and deliberately attracted attention during the incident. If the jury believed the defense theory, Darby should not have been convicted.

Bank robbery is a general intent crime requiring that a defendant take the money by force and violence or by intimidation. Attempted bank robbery requires the specific intent to rob a bank.

■ We must view the instructions in the context of the trial. It is clear that the judge, the prosecutor and the defense attorney all interpreted the court's instructions as not requiring proof that Darby intended to take the money. The government on appeal points to language that can be interpreted as requiring such an intent. However, the transcript clearly reveals that this was not the interpretation of the instructions intended by the court or as interpreted by the attorneys and this was not the way the case was presented to the jury. The jury's questions, the court's response, and the prosecutor's closing argu-

ment evidence this misunderstanding. Thus, in the context of the trial, we conclude that the instructions misled the jury. During deliberations the jury submitted two questions to the court. The first read, "Can a person of impaired mental capacity or under the influence of medication commit an act unknowingly?" Over defense counsel's objection, the court responded by repeating the instructions stating the elements and the definition of "knowingly" and by stating, "In this case the impaired mental capacity or whether the accused was under the influence of medication is not a defense and those two issues are not to be considered by you." The second note from the jury read, "Are we permitted to append a qualification to the verdict of either guilty or not guilty?" The court responded: "No." Shortly thereafter, the jury returned a verdict of guilty.

By asking whether medication or mental illness could negate Darby's knowledge, the jury was obviously grappling with the intent element. It is entirely plausible that they believed the defense theory and were trying to decide whether they still had to convict Darby under the trial theory, which only required that Darby act knowingly. The court's response to the jury's questions did not dispel its confusion.

The confusion over the requisite intent was compounded by the government's closing argument. In closing, the prosecutor argued:

> Again, what constitutes a crime of attempted robbery is that the defendant attempted to take money from another person, money which belonged to the bank[;] that he did it knowingly or voluntarily and I think if you listen very hard *you will not hear an instruction that* when he went in there *he had to intend to rob the bank,* [that] he had to intend to take money from the bank. I don't believe you will hear that in the jury instructions that you receive today....
>
> Again, as I told you, the court will instruct you that whatever it is, whatever the motive was, *whatever Mr. Darby's intentions* for being in there that day *were, ... not relevant.*

We conclude that the instructions, taken in the context of the trial, did not adequately charge the jury on the issue of culpable intent. The jury was misled as to the specific intent necessary for a conviction of an attempted bank robbery, i.e., the intent to take money from a federal bank by force and violence or intimidation. "[A] conviction should not rest on ambiguous and equivocal jury instructions on a basic issue." *Washington,* 819 F.2d at 226. Assuming, without deciding, that application of the harmless error doctrine is appropriate in this context, we cannot conclude that the instructions were harmless beyond a reasonable doubt. *Id.; cf. Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 3105, 92 L.Ed. 2d 460 (1986).

### 2. *Psychiatric Testimony*

The district court permitted the psychiatrist, Dr. Foerster, to testify that he had treated Darby but did not allow any testimony regarding Darby's mental condition. The proffered testimony was meant to corroborate Darby's testimony that he did not intend to rob the bank. Dr. Foerster would have testified that Darby was refused hospitalization because he did not have suicidal tendencies, that Darby had behavioral tendencies whereby he acted out or dramatized his problems, and that Darby's acts in the bank were consistent with these tendencies.

Because the district court believed that culpable intent was irrelevant, it felt that the testimony would mislead the jury. However, we conclude that Dr. Foerster's proffered testimony, if it concerned Darby's capacity to form the requisite intent, would have been admissible.

We reverse and remand to the district court for further proceedings consistent with this opinion. REVERSED AND REMANDED.

TANG, Circuit Judge, dissenting:

If on April 1, 1990 John Dillinger, Jr. donned a mask, entered a bank, frightened the customers and by written note demanded money of the teller, under the rule crafted by the majority today he may have a

defense: "April Fools! I was only kidding. I wasn't meaning to take the bank's money at all." From the novel facts of this case, the majority has derived a rule which invites frustrated bank robbers to proffer a defense theory which makes a nullity of the crime of attempt. Because I believe the result is contrary to the language and logic of § 2113(a), and ignores and conflicts with the precedent of this circuit and others, I dissent. The statute and the case law on attempted bank robbery do not require specific intent to steal; rather it is sufficient that there be an intent to perform the acts that constitute robbery, the taking by force and violence or by intimidation.

Beginning with the language of § 2113, one must note that an intent element is specifically incorporated into some but not all the provisions of the statute. The first paragraph of § 2113(a), at issue in this case, makes no mention of an intent element:

> *Whoever, by force and violence, or by intimidation, takes, or attempts to take,* from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association ... [shall be fined ...] (emphasis added). 18 U.S.C. § 2113(a) (Supp. IV 1986).

The second paragraph of § 2113(a) discussing entering, however, does specifically incorporate an intent element. In particular, it provides:

> *Whoever enters or attempts to enter* any bank, credit union, or any savings and loan association, or any building used in whole or in part of a bank, credit union, or as a savings and loan association, *with intent to commit in such bank,* credit union, or in such savings and loan association, or building, or part thereof, so used, *any felony* affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any

larceny ... (emphasis added). 18 U.S.C. § 2113(a) (1982).

These differences are reflected in the remaining provisions of the statute as well. For example, an intent element is specifically incorporated into § 2113(b), the taking and carrying away of bank money or property "with intent to steal or purloin." But intent is not a part of § 2113(d), which proscribes "assault[ing] or put[ting] in jeopardy the life of any person by the use of a dangerous weapon," or § 2113(e), "kill[ing] any person, or forc[ing] any person to accompany him without the consent of such person." *See* 18 U.S.C. § 2113(b), (d), (e).

These distinctions in the language of the statute make good sense and we have noted and confirmed them before. *See, e.g., United States v. Klare,* 545 F.2d 93, 94 (9th Cir.1976), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1699, 52 L.Ed.2d 390 (1977) (per curiam). Because the "entering" set out in the *second* paragraph of § 2113(a) could be construed as an "innocent" act, the statute requires "felonious intent" for that act to constitute a crime. However, the statute requires no mental element for several of the other offenses described in § 2113, including the acts of assault, killing, or taking or attempted taking "by force and violence, or by intimidation", because those provisions "describe acts which, when performed, are so unambiguously dangerous to others that the requisite mental element is necessarily implicit in the description." *United States v. DeLeo,* 422 F.2d 487, 491 (1st Cir.), *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970); *see also, Klare,* 545 F.2d at 94 (statutory offense set forth in the first paragraph of section 2113(a) proscribes violent or intimidating acts; reasonable to conclude that Congress intended to punish persons who engage in such acts without requiring that the Government prove every element of common law robbery) (citing *DeLeo,* 422 F.2d at 490–91).

Thus, the language of the statute itself suggests that for crimes charged under the first paragraph of section 2113(a), it is not material whether the subjective or specific

intent of the bank robber is to take; the crime rather "is his resort to force and violence, or intimidation, in the presence of another person to accomplish his purposes." *DeLeo*, 422 F.2d at 491. *See also, United States v. Porter*, 431 F.2d 7, 10 (9th Cir.) *cert. denied*, 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970) ("[w]here a person has the mental capacity for criminal responsibility, proof that he took property of another by force or violence, or by intimidation, necessarily establishes the required criminal intent, whether or not characterized as 'specific' intent").

Nor does the language of the statute allow for the distinction, drawn by the majority, between the intent required for an attempted bank robbery and a completed bank robbery under the first paragraph of § 2113(a). The crime of attempt does not exist in the abstract, but rather exists only in relation to other offenses. Thus, we must look to the completed crime in order to identify the kind of intent required. In effect, the majority has created a different and more difficult mens rea requirement for the attempt as opposed to the completed crime. This distinction is unwarranted.

We have previously and consistently stated that a completed bank robbery under the first paragraph of § 2113(a) is "a general intent crime, not a specific intent crime." *United States v. Burnim*, 576 F.2d 236, 237 (9th Cir.1978) (citing *United States v. Hartfield*, 513 F.2d 254, 259 (9th Cir.1975); *Porter*, 431 F.2d at 10). *See also, United States v. Smith*, 638 F.2d 131, 132 (9th Cir.1981) (noting "[i]n the Ninth Circuit, 18 U.S.C. § 2113(a) is a general intent and not a specific intent crime") (citing *United States v. Lemon*, 550 F.2d 467, 470 n. 1 (9th Cir.1977); *Klare*, 545 F.2d at 94; *Hartfield*, 513 F.2d at 259; *Porter*, 431 F.2d at 10). We have also explained that this "general intent" requires that the acts of taking a bank's money by force and violence or by intimidation be done "knowingly" and " 'knowingly' mean[s] 'voluntarily and intentionally.' " *Smith*, 638 F.2d

at 133. Ordinarily, the mens rea required for a criminal attempt is the same as the culpability otherwise required for the commission of the completed crime. *United States v. Mandujano*, 499 F.2d 370, 376 & n. 6 (5th Cir.1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975); *see also, United States v. Jackson*, 560 F.2d 112, 117 & n. 6 (2nd Cir.) *cert. denied*, 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977) (conviction of attempted bank robbery under 18 U.S.C. § 2113(a)). Thus, the intent required for attempted bank robbery under the first paragraph of § 2113(a) should be the same as that required for completed robberies, namely, "a general intent to commit the acts proscribed by the statute." *Klare*, 545 F.2d at 94.

A panel of this Court reached this conclusion precisely in *United States v. Hartfield*, 513 F.2d 254 (9th Cir.1975), a case involving a defendant charged with attempted bank robbery under the first paragraph of § 2113(a). There, we considered whether certain evidence was admissible to show Hartfield's lack of mental capacity to form a specific criminal intent. We concluded that the first paragraph of § 2113(a) "does not require proof of a specific intent" and therefore, that evidence of voluntary drug intoxication could not be considered. *Hartfield*, 513 F.2d at 259 (citing *Porter*, 431 F.2d 7).[1] This case is no different.

The Tenth Circuit has rejected a defense theory strikingly similar to that presented by Darby herein. *United States v. Lewis*, 628 F.2d 1276 (10th Cir.1980), *cert. denied*, 450 U.S. 924, 101 S.Ct. 1375, 67 L.Ed.2d 353 (1981). In *Lewis*, the defendant was charged under the second paragraph of § 2113(a) which requires specific intent to commit a felony in a bank. The defense theory was that Lewis, an alcoholic, decided to rob a bank so that he would be caught and returned to prison for treatment; thus, like Darby, Lewis claimed he lacked the intent to separate the bank from its money. The Tenth Circuit rejected this

---

1. The teaching of *Hartfield* on the question of intent has been cited and followed in numerous subsequent decisions of this circuit, albeit not in a subsequent case involving the charge of attempted bank robbery. *See, e.g., Smith*, 638 F.2d at 132; *Burnim*, 576 F.2d at 237; *Lemon*, 550 F.2d at 470, n. 1; *Klare*, 545 F.2d at 94.

argument and concluded that "an individual who enters a bank with the intention of taking money by intimidating employees of the bank, is answerable for the consequences of his actions, if he is mentally competent, even assuming his motive for committing the act was to be caught and returned to prison." *Lewis,* 628 F.2d at 1279. Ironically, then, even under a stricter specific intent standard, at least one circuit court has found sufficient criminal intent to convict, despite the presence of a seemingly "innocent" motive and on facts similar to those of this case. The reason given again derives from *DeLeo:* culpable intent under § 2113(a) most commonly inheres in the unambiguously dangerous nature of the acts. *See Lewis* at 1279.

The majority's opinion of course, is premised not on *Hartfield* but on the statement in *United States v. Buffington,* 815 F.2d 1292, 1301 (9th Cir.1987), that a conviction for attempted bank robbery requires proof of "culpable intent." Curiously, neither *Buffington* or the later case *United States v. Still,* 837 F.2d 871, 873 (9th Cir.1988), rely on or otherwise make reference to the *Hartfield* line of cases. Instead, those cases rely on *United States v. Snell,* 627 F.2d 186, 187–88 (9th Cir.1980), *cert. denied,* 450 U.S. 957, 101 S.Ct. 1416, 67 L.Ed. 2d 382 (1981) (per curiam), which in turn cites the Fifth Circuit case, *United States v. Mandujano,* 499 F.2d 370 (5th Cir.1974). *Mandujano,* however, as noted above, suggested that the culpability required for an attempt is the same as that required for the completed crime; thus, its account of the culpability required for criminal attempts is of only limited utility. *See Mandujano,* 499 F.2d at 376 (holding conviction under 21 U.S.C. § 846 for attempted distribution of heroin requires showing of culpable intent and conduct constituting a substantial step). Nor do any of the cases relied on by the majority—*Still, Buffington* or *Snell*—provide much guidance on the meaning of "culpable intent." [2] Both *Still* and *Buffington* turned principally on the second, "substantial step" aspect of an attempt and neither involved "actual move-

ment" toward a bank, let alone an actual entry, as is present here. *Still,* 837 F.2d at 873–74; *Buffington,* 815 F.2d at 1302–03.

In the absence of more pertinent authority, I would allow the teaching of *Hartfield* to inform the "culpable intent" of *Buffington:* a person is guilty of an attempt to take money or property from a bank under the first paragraph of § 2113(a) if he or she knowingly and intentionally engages in the acts or conduct constituting the crime. It is unnecessary to prove a definite purpose to deprive the bank permanently of its property because the requisite culpable intent inheres in the manifestly dangerous nature of the acts. *See Klare,* 545 F.2d at 94.

Under this standard, Darby's actions in the bank, acts which had the effect of intimidating the bank teller, bank security guards and bank customers, were sufficient to infer the requisite culpable intent to take or attempt to take property of the bank. Darby's actions and in particular, his presentation of a demand note, placed numerous persons in the bank in fear and were strongly corroborative that a taking or attempted taking was imminent. That he intended to get arrested so as to obtain psychiatric care is immaterial. The instructions given by the district court, which required that the government establish (1) "the act or acts of attempting to take," (2) "by force or violence or by means of intimidation," and (3) "[d]oing such act or acts knowingly," adequately informed the jury of the intent requirement necessary to convict. *See United States v. Miller,* 688 F.2d 652, 662 (9th Cir.1982). Accordingly, I would affirm the judgment of the district court.

The language of § 2113(a) and the teaching of *Hartfield* make plain that Darby's behavior on the day in question involved precisely the sort of intimidating and potentially violent acts against banks that Congress sought to proscribe. Willie Sutton, the notorious bank robber, when asked why he specialized in robbing banks replied "because that's where the money is." *See State v. Zayas,* 195 Conn. 611, 490 A.2d 68,

**2.** Significantly, neither *Still, Buffington* or *Snell* employ the expression "specific intent."

73 (1985). Federally insured banks are not, in any case, where the counselors are. Under the majority's formulation, virtually every criminal defendant who entered a bank and "created a stir," however intimidating, could later claim a motive, other than an intent to take, for his or her actions. Because I cannot agree that such a result was intended, and because I find the majority's holding contrary to common sense and experience, I dissent.