**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee*,

v.

CORBERT GOLDTOOTH,
       *Defendant-Appellant*.

No. 12-10570

D.C. No.
3:11-cr-08190-
JAT-1

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee*,

v.

MYRON TSOSIE,
       *Defendant-Appellant*.

No. 12-10571

D.C. No.
3:11-cr-08190-
JAT-3

OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, Senior District Judge, Presiding

Argued and Submitted
March 10, 2014—San Francisco, California

Filed June 12, 2014

Before: John T. Noonan, Sidney R. Thomas,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Noonan

## SUMMARY[*]

### Criminal Law

The panel reversed two defendants' convictions on two counts of aiding and abetting robbery on the Navajo Nation, in violation of 18 U.S.C. §§ 2111, 1153, and 2, and remanded for entry of judgment of acquittal.

The panel held that the defendants' convictions' on Count 1 cannot survive under the government's aiding and abetting theory because no rational juror could have found that the defendants had the requisite advance knowledge that the robbery was to occur, where the government presented no evidence that the taking of Kallen Crawford's tobacco was anything but a spontaneous act by the snatcher.

Regarding Count 2, the panel held that attempted robbery under § 2111 requires specific intent – *i.e.*, that the defendants intended to take the things of value alleged in the indictment. The panel held that a rational juror could not have concluded beyond a reasonable doubt that the defendants had intended to rob Sheldon Davis of a wallet they never asked for, never looked for, and never knew existed;

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and that a rational juror could not have found that the defendants intended to rob Davis's nonexistent money. As the government failed to prove that the defendants possessed the mental state required for the underlying crime of attempted robbery, the panel concluded that the government necessarily failed to prove that either man had aided and abetted any such attempt.

## COUNSEL

Tyrone Mitchell, Tyrone Mitchell, P.C., Phoenix, Arizona, for Defendant-Appellant Corbert Goldtooth.

James S. Park, Park Law Office, PLC, Phoenix, Arizona, for Defendant-Appellant Myron Tsosie.

Rachel C. Hernandez (argued) and Tracy Van Buskirk, Assistant United States Attorneys, Phoenix, Arizona, for Plaintiff-Appellee.

## OPINION

NOONAN, Circuit Judge:

Corbert Goldtooth and Myron Tsosie (together, "Appellants") appeal their convictions on two counts of aiding and abetting robbery on the Navajo Nation. Because no rational juror could have convicted either man of either count, we reverse.

# I

## A

The facts are not in dispute.  In the early morning hours of July 31, 2011, Kallen Crawford and Sheldon Davis, both in their late teens, were rolling tobacco and smoking cigarettes outside a gas station in Fort Defiance, Arizona, a small community within the Navajo Nation.  At approximately two a.m., a four-door sedan driven by a woman arrived at the gas station.  Three men, two of whom the police later identified as Appellants, exited the vehicle and walked over to Crawford and Davis, who were seated next to each other on the curb.  As the strangers approached, Crawford and Davis noticed that each man was trying to conceal a weapon—one carried a baseball bat, another held a 12-inch knife, and the third had a pocket knife.  The men surrounded Crawford and Davis: the two men with knives stood in front of them while the man with the bat stood behind.

Crawford, trying to defuse the situation, offered to roll the men some Tops brand tobacco, which he had purchased at the gas station for about three dollars.  One of the men then asked Crawford and Davis if they claimed membership in any gang.  They said no.  After identifying themselves as members of a local gang, Appellants asked whether the teens had anything on them or in their pockets.  Again, they said no.  They were never asked whether they had money or a wallet.

The man with the pocket knife then quickly patted down Davis's front side, while the man with the baseball bat patted down Crawford's.  Nothing was found or taken.  Davis testified later that, in reality, he had been carrying a wallet in

a pocket of his "skinny jeans." He also testified that he typically kept personal property in his back pockets. Davis, however, had no money in his wallet or anywhere else on him. As for Crawford, he testified that he had had a wallet in his back pocket and a $175 smartphone in his front pocket. Crawford and Davis remained seated during the pat downs; they were never asked to stand.

As Crawford continued to roll the tobacco into cigarettes, the man to his rear "nudged" him in the head with the baseball bat to hurry him up. The man with the pocket knife took Crawford's hat and, before returning it, smacked Davis on the back of the head and urged his compatriots to get going. Crawford eventually handed the three cigarettes he had rolled to the man with the bat, who, suddenly and without permission, snatched the remaining tobacco from Crawford's lap.

The three men then walked back to the car they had arrived in and were driven away. The encounter lasted five or ten minutes. No verbal threats were ever made; Crawford and Davis were not physically harmed.

Some twenty to thirty minutes later, a police officer stopped the vehicle carrying the three men. The officer had received a call indicating that the sedan had been involved in a gas station robbery. Before the car came to rest, the officer noticed something shiny being ejected from the passenger's side of the vehicle. A backup officer arrived soon thereafter, and he discovered a long silver knife lying in the dirt by the car's rear. Appellants were arrested on the scene and transported by a third officer to a nearby jail. During booking, the police found a black pocket knife on Tsosie's person. The third man in the vehicle, Goldtooth's teenage

son, was taken to the hospital to treat a badly bleeding hand. Before he left, the police removed a sheath from the young man's belt matching the long knife found in the dirt. The female driver consented to a vehicle search, which turned up a weighted, black baseball bat. No tobacco was ever found.

On August 13, 2011, Special Agent Matthew Shelley, a federal investigator, interviewed Goldtooth about the events of July 31. During the interview, Goldtooth admitted to asking Crawford and Davis for cigarettes, and that he may have done so "in a threatening way." Goldtooth also admitted to "flying" his gang colors that night and to throwing the knife out of the vehicle. He never mentioned money or a wallet.

On September 27, 2011, Appellants were each charged with two counts of aiding and abetting robbery on an Indian reservation, in violation of 18 U.S.C. §§ 2111, 1153, and 2. Count 1 alleged that Appellants had robbed or attempted to rob Crawford of "a package of Tops brand tobacco." Count 2 alleged that Appellants had robbed or attempted to rob Davis of his "money and wallet." Appellants pleaded not guilty to both counts.

## B

Beginning April 11, 2012, Appellants were tried jointly by a jury of their peers. In its case in chief, the government called as witnesses Davis, Crawford, the female driver, and various law enforcement personnel involved with the case.

At the close of evidence, Appellants orally moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. In denying the motion, the district court

stated that it did not want to "minimize the appeal" of Appellants' arguments with respect to count 2 of the indictment—the alleged robbery or attempted robbery of Davis's money and wallet—so it invited "further briefing" on the matter should they be convicted on that count.

On April 20, 2012, after roughly five hours of deliberation, the jury found Appellants guilty on both counts.

Four months later, on August 31, 2012, Goldtooth filed a written motion again requesting that the district court issue a judgment of acquittal, or, in the alternative, grant a new trial. Tsosie joined the motion. The district court denied the Rule 29 motion with respect to count 1 on October 1, 2012, but withheld its ruling as to count 2. Concerned that count 2 alleged that Appellants had robbed or attempted to rob Davis of his "money and wallet" even though "there was no money" on him, the lower court asked for "more briefing."

On October 31, 2012, the district court denied Appellants' Rule 29 motion in its entirety, noting only that it was "satisfied" with the government's supplemental briefing. That same day, the district court sentenced Goldtooth to 115 months in prison—the high end of his Sentencing Guidelines range—followed by three years of supervised release. Tsosie was sentenced to 78 months in prison—the low end of his Guidelines range—and three years of supervised release.

This appeal followed.

## II

Appellants challenge the sufficiency of the evidence against them.[1]  Our review is de novo.  *See United States v. LaBuff*, 658 F.3d 873, 876 (9th Cir. 2011).  We reverse.[2]

## A

Our inquiry proceeds in two parts.  *See United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc). First, we "consider the evidence presented at trial in the light most favorable to the prosecution."  *Id.* at 1164.  In so doing, we presume that the jury resolved any evidentiary conflicts in the government's favor.  *See id.*  Second, we determine whether the evidence, so viewed, is sufficient "to allow *any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt."  *Id.* (alteration in original) (internal quotation marks omitted).  Step two, we have explained, protects against those "rare occasions" when a jury convicts someone even though "no rational trier of fact" could have found guilt beyond a reasonable doubt.  *Id.*  That

---

[1] Before the district court, both men challenged the sufficiency of the evidence against them as to both counts.  Tsosie's decision not to challenge count 1 on appeal does not foreclose our reversing his conviction on that count.  *See United States v. Baker*, 999 F.2d 412, 416–17 (9th Cir. 1993) (reversing codefendant's conviction even though he "did not raise the issue on appeal"); *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) ("[I]t is 'manifestly unjust' to reverse the conviction of one co-defendant but to uphold the conviction of another co-defendant when the same error affected both defendants.").  Nor does our doing so prejudice the government.  *See United States v. Brooks*, 610 F.3d 1186, 1202 (9th Cir. 2010).

[2] Because we reverse for insufficient evidence, we do not reach Appellants' other claims of error.

said, we have an "obligation" to identify such rare occasions, including where "the evidence construed in favor of the government may be insufficient to establish every element of the crime" or "where mere speculation, rather than reasonable inference, supports the government's case." *Id.* at 1167; *see also United States v. Bennett*, 621 F.3d 1131, 1139 (9th Cir. 2010).

The jury here convicted Appellants on two counts of aiding and abetting robbery on an Indian reservation, in violation of 18 U.S.C. §§ 2111, 1153, and 2. To convict either man on count 1, the government had to prove four elements beyond a reasonable doubt: (1) that the defendant took or attempted to take a package of Tops brand tobacco from Crawford; (2) that the defendant used force, violence, or intimidation in doing so; (3) that the alleged robbery took place on the Navajo Nation in the District of Arizona; and (4) that the defendant is an Indian. To convict either man on count 2, the government had to prove the same four elements beyond a reasonable doubt, except that the first element instead required proof that the defendant took or attempted to take money or a wallet from Davis.

The government could also satisfy its burden by proving that Appellants had aided and abetted a robbery. *See United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) ("[A]iding and abetting is embedded in every federal indictment for a substantive crime."). To convict either man under such a theory, the government had to prove beyond a reasonable doubt: (1) that a robbery was committed by someone; (2) that the defendant knowingly and intentionally aided, counseled, commanded, induced, or procured that person to commit each element of robbery; and (3) that the defendant acted before the crime was completed. *See Manual*

*of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* § 5.1 (2010). The government was not required to prove which person had actually carried out the robbery and which person or persons had aided and abetted. *See United States v. Vaandering*, 50 F.3d 696, 702 (9th Cir. 1995).

**B**

As to count 1, the government emphasized an aiding and abetting theory because it could not prove which of the men had actually grabbed the tobacco from Crawford's lap.

To aid and abet a robbery, however, Appellants must have had foreknowledge that the robbery was to occur. In *Rosemond v. United States*, 134 S. Ct. 1240 (2014), the Supreme Court examined 18 U.S.C. § 2, the federal aiding and abetting statute under which Appellants were convicted. There, the Court explained that "an aiding and abetting conviction requires . . . a state of mind extending to the entire crime." *Id.* at 1248. With respect to an armed drug sale under 18 U.S.C. § 924(c), the Court held that an aiding and abetting conviction requires the government to prove the defendant had "advance knowledge" that a coconspirator would use or carry a gun as part of the crime's commission. *Id.* at 1243. "[A]dvance knowledge," continued the Court, "means knowledge at a time the accomplice can do something with it—most notably, opt to walk away." *Id.* at 1249–50.

No rational juror could have found that Appellants had such advance knowledge. The evidence, viewed in the light most favorable to the government, showed only that Appellants exited the car and, weapons drawn, approached

Crawford and Davis; that Crawford, feeling intimidated, offered to roll Appellants cigarettes; that Goldtooth was interested in getting cigarettes and may have asked for them in a threatening way; and that immediately after Crawford handed the cigarettes to the man with the baseball bat, that man reached down and grabbed the remaining tobacco from Crawford's lap.

None of this evidence indicates foreknowledge. There was no evidence Appellants had drawn up plans or had discussions prior to the taking; no evidence Crawford or Davis thought the tobacco would be snatched; and no evidence the two non-snatchers had any idea the taking would occur, let alone that they had aided or encouraged it.

Nor could a rational juror have inferred foreknowledge or intent from the circumstances. True, a jury may infer advance knowledge "if a defendant continues to participate in a crime after" it has been committed. *Rosemond*, 134 S. Ct. at 1250 n.9. But there was no evidence here that the two non-snatchers in any way participated in the snatch. Mere presence at the scene does not an aider and abettor make. *See United States v. Andrews*, 75 F.3d 552, 555 (9th Cir. 1996). Even if Appellants had become aware of the taking once it happened, that alone cannot satisfy the government's burden. *See United States v. Bancalari*, 110 F.3d 1425, 1430 (9th Cir. 1997) (explaining that "mere presence at the scene of the crime and knowledge that the crime is being committed is not enough" to sustain an aiding and abetting conviction).

What's more, neither Appellant would have had time to participate after learning of the taking. Crawford and Davis, the government's own witnesses, each testified that the culprits left the scene immediately after the snatch. Crawford

stated, for example: "It was like a matter of seconds after I gave the cigarettes back to them was when they left, and the guy behind me took my package and they left." In other words, Appellants could not have participated because there was no time to do so.

At bottom, the government presented no evidence that the taking of Crawford's tobacco was anything but a spontaneous act by the snatcher. The culprit, says the government, just "grabbed" or "snatched" the tobacco from behind Crawford. Such an act of spontaneity could not have been known in advance or intended by another. *See* 16 *The Oxford English Dictionary* 307 (2d ed. 1989) (defining "spontaneous" actions). Put simply, one cannot know in advance what cannot be known in advance.

Appellants' count 1 convictions cannot survive under the government's aiding and abetting theory.[3]

## C

As to count 2, the government acknowledges, as it must, that Appellants could only have been convicted of attempting to rob Davis's money or wallet because nothing was actually taken from him.

---

[3] To the extent the jury may have found either man guilty as the principal robber, rather than as an aider and abettor, that verdict would have been equally irrational. Based on the wildly inconsistent identification evidence produced at trial, no rational juror could have concluded beyond a reasonable doubt that either Goldtooth or Tsosie was the snatcher.

It does not appear that our court has expressly decided whether attempted robbery under 18 U.S.C. § 2111 requires proof of specific intent. *See United States v. Burdeau*, 168 F.3d 352, 356 (9th Cir. 1999) (holding that completed robbery under 18 U.S.C. § 2111 "is a crime of general intent" without addressing attempted robbery). We now hold that it does.

In *Burdeau*, we looked to our more developed case law interpreting 18 U.S.C. § 2113(a), the federal bank robbery statute, because "the wording of § 2111 is nearly identical to the wording of 18 U.S.C. § 2113(a)." *Id.* We do the same here. "[E]ven though bank robbery itself is a general intent crime," we have explained, "attempted bank robbery requires the specific intent to rob a bank within the meaning of 18 U.S.C. § 2113(a)." *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1193 (9th Cir. 2000) (en banc) (citing *United States v. Darby*, 857 F.2d 623, 626 (9th Cir. 1988)). Our reasoning in *Darby* applies with equal force to the generic federal robbery statute:

> [I]n order to convict for bank robbery, the government must prove that the defendant *took* the property. This act of *taking* by force, violence, or intimidation is sufficient to constitute the crime of bank robbery. It is not necessary to prove an intent to steal. When the charge is one of *attempted* bank robbery, however, the transaction in question is at an earlier stage. There has not been a *taking* of the property. We are thus concerned with whether attempted bank robbery requires an *intent to take* the property. . . . In order to prove an attempt to commit a crime, the

> government must prove an intent to commit the acts that constitute the crime. Thus, in order to prove attempted bank robbery, it is necessary to prove that the defendant intended to take the property by force, violence or intimidation.

*Darby*, 857 F.2d at 626.

So too here. Accordingly, we hold that attempted robbery under 18 U.S.C. § 2111, like most other attempt crimes, requires proof of specific intent. *See id.* ("Attempted bank robbery requires the specific intent to rob a bank."); *see also* 21 Am. Jur. 2d *Criminal Law* § 155 (2014) ("Attempt is a specific-intent crime.").

The government, then, was required to prove beyond a reasonable doubt that Appellants intended to take the things of value alleged in the indictment—*viz.*, Davis's money or wallet. If no rational juror could have so found, Appellants' convictions must fall.

The government's case on count 2 rested solely on three pieces of evidence. First, Davis testified that, as best he could remember, he was carrying a wallet but no money on the night of the alleged robbery.[4] Second, Davis testified that one

---

[4] That Davis had no money on him does not preclude an attempted robbery conviction, so long as the government could prove beyond a reasonable doubt that Appellants had intended to take money they thought Davis had. *See United States v. Fleming*, 215 F.3d 930, 936 (9th Cir. 2000) ("Factual impossibility is not a defense to an inchoate offense."); *see also* Wayne R. LaFave, *Criminal Law* 633 (5th ed. 2010) ("All courts are in agreement that what is usually referred to as 'factual impossibility' is no defense to a charge of attempt.").

of the men had asked him and Crawford whether he had anything on him or in his pockets. And third, Crawford and Davis testified that two of the men had briefly patted down their front pockets but found nothing.

A closer look at this evidence reveals that no rational juror could have found Appellants guilty of attempted robbery of money or a wallet beyond a reasonable doubt. It is true that one of the men asked Davis whether he had anything in his pockets. But it is just as true that Appellants never asked Davis if he had money or a wallet on him. There was also no evidence that Davis gave Appellants any reason to believe that he was carrying money or a wallet. In fact, Davis told Appellants (untruthfully) that he had nothing in his pockets.

As for the pat downs, Davis testified that he was patted down by the man with the pocket knife, who stood facing him. Davis, who was seated, also testified that his pat down was "quick" and that it went from his "ribs . . . all the way down to [his] thighs," including his "front pockets." Viewed in the light most favorable to the government, the evidence was that Davis's wallet was in a back pocket of his "skinny jeans," where he typically carried his personal property, and that Appellants failed to find anything during the pat down because the man with the pocket knife did not frisk Davis's back pockets.

Appellants' actions during the pat downs do not evince an intent to rob Davis of money or a wallet. Quite the opposite. Had Appellants wanted to rob Davis, they would have asked him to stand up so they could search him, including his back pockets, more easily. Had Appellants wanted to rob Davis, they would not have conducted "just a quick pat down"; they

would have searched his person thoroughly. Had Appellants wanted to rob Davis, they would not have patted down his "ribs," where men typically do not keep money or a wallet. Appellants were in total control of the situation. Had they wanted to find Davis's wallet, they would have.

In addition, Crawford, who was seated right next to Davis, testified that he was patted down from behind by the man with the baseball bat. Any rational juror would conclude that the man who patted down Crawford would have had ready access to the back pockets of either teen, had he so wanted.

Perhaps most significantly, Crawford testified that he had been carrying a wallet in his back pocket and a smartphone, worth $175, in his front pocket. The evidence in no way explains how Appellants, had they been looking for something to rob, could have overlooked this expensive smartphone in the very pocket they patted down. Indeed, Appellants seemingly went out of their way *not* to rob Davis of any valuables. The only fair inference is that they were looking for weapons. Finding none, Appellants left the teens' pockets alone.

In light of the foregoing, a rational juror could not have concluded beyond a reasonable doubt that Appellants had intended to rob Davis of a wallet they never asked for, never looked for, never found, and never knew existed. Neither could a rational juror have found that Appellants had intended to rob Davis's nonexistent money. For a juror to have inferred otherwise "would be impermissible speculation." *Bennett*, 621 F.3d at 1139; *see also United States v. Dinkane*, 17 F.3d 1192, 1198 (9th Cir. 1994) (reversing defendant's

armed robbery conviction where the evidence was insufficient to establish his intent to aid and abet).

As the government failed to prove that Goldtooth or Tsosie possessed the mental state required for the underlying crime of attempted robbery, it necessarily failed to prove that either man had aided and abetted any such attempt. *See United States v. Sutcliffe*, 505 F.3d 944, 959 (9th Cir. 2007) ("There is no question that a conviction for aiding and abetting a crime requires proof that the underlying crime was committed . . . ."). Without proof of the requisite mens rea, Appellants' convictions on count 2 cannot stand.

* * *

We reverse Appellants' convictions and remand to the district court for entry of judgment of acquittal on both counts. Appellants may not be retried. *See McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (per curiam) ("Because reversal for insufficiency of the evidence is equivalent to a judgment of acquittal, such a reversal bars a retrial.").

**REVERSED** and **REMANDED.**