NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-10547 |
| Plaintiff-Appellee, | D.C. No. 4:14-cr-00168-YGR-2 |
| v. | |
| DAMION SLEUGH, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted February 14, 2020
San Francisco, California

Before: GOULD and MURGUIA, Circuit Judges, and FEINERMAN,[**] District Judge.

A jury convicted Damion Sleugh of (1) conspiracy to distribute or possess with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1), (b)(1)(D), 846; (2) attempted possession with intent to distribute marijuana, *id.*; (3) Hobbs Act

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Gary Feinerman, United States District Judge for the Northern District of Illinois, sitting by designation.

robbery, 18 U.S.C. §§ 1951(a), (b)(1); (4) using or carrying a firearm during or in furtherance of a drug trafficking crime or crime of violence, *id.* §§ 2, 924(c); (5) using a firearm during a crime of violence or drug trafficking crime and causing murder, *id.* §§ 2, 924(j)(1); and (6) being a felon in possession of a firearm, *id.* § 922(g)(1). Sleugh timely appealed, challenging his convictions on several grounds. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.       Sleugh argues that the district court erred when it declined to instruct the jury on voluntary and involuntary manslaughter. "We review the refusal to instruct on a lesser included offense for abuse of discretion." *United States v. Begay*, 673 F.3d 1038, 1045 (9th Cir. 2011) (en banc). Because Sleugh's trial counsel conceded that the evidence did not support a voluntary manslaughter instruction, the district court did not abuse its discretion in declining to give that instruction. *See id.* Nor did the district court abuse its discretion when it declined to give an involuntary manslaughter instruction, as the evidence did not support the gross negligence finding necessary for an involuntary manslaughter conviction. *See United States v. Rivera-Alonzo*, 584 F.3d 829, 834 (9th Cir. 2009).

2.       Sleugh next argues that the district court erred when it permitted certain testimony from the government's Jamaican Patois translator, Carlton Turner, and that the testimony prejudiced him as to the Hobbs Act robbery charge. Because Sleugh did not object to the testimony at issue, we review for plain error.

*See United States v. Lloyd*, 807 F.3d 1128, 1152 (9th Cir. 2015).

"The plain error standard requires the party challenging an instruction to show that: (1) there was error; (2) the error was plain; (3) the error affected that party's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Bearchild v. Cobban*, 947 F.3d 1130, 1139 (9th Cir. 2020). A defendant satisfies the fourth prong, "undoubtedly the hardest [prong] to meet," *Claiborne v. Blauser*, 934 F.3d 885, 900 (9th Cir. 2019) (alteration in original) (quoting *Hoard v. Hartman*, 904 F.3d 780, 791 (9th Cir. 2018)), when "[i]t is impossible to know whether the jury would have come to the same conclusion" absent the error, *United States v. Becerra*, 939 F.3d 995, 1006 (9th Cir. 2019). Even if Sleugh could meet the first three requirements, he does not meet the fourth.

At trial, Turner testified to his English translation of Sleugh's recorded conversation with his girlfriend, in which Sleugh spoke in a mix of Jamaican Patois and English. The audio recording of the conversation and Turner's written translation were admitted into evidence. On appeal, Sleugh attacks various aspects of Turner's testimony. For example, Turner interpreted Sleugh's instruction to his girlfriend, originally in Jamaican Patois, that she "can't write nothing to[o] serious in the letters," as meaning that she should not "write anything too serious in the letters because the jail guards . . . read them," even though neither Sleugh nor his

3

girlfriend mentioned jail guards. Similarly, Turner interpreted Sleugh's English statement, "you need that at least you need the . . . to even send me all the way up the river," to mean that "the murder weapon wasn't found, and they need that to send him all the way up the river," even though neither Sleugh nor his girlfriend mentioned a weapon, and even though the statement was in English. In Sleugh's view, the clearest error arose from Turner's testimony that it "sounded like [Sleugh and someone else] were setting up some type of a robbery," which derived from Turner's translation of Sleugh's Jamaican Patois statement, "A no to dat deh person a to im," to the English statement, "[I didn't text] that person, I text him."

Even without Turner's testimony on those points, the evidence clearly supported the jury's finding that Sleugh committed Hobbs Act robbery. Shawndale Boyd, a co-defendant who pleaded guilty before trial, testified that Sleugh admitted to him that he took the money and marijuana from the victim, Vincent Muzac, and drove off after Sleugh and Muzac had an argument over the marijuana's quality that ended in Sleugh shooting Muzac, and that Sleugh later displayed several pounds of the marijuana at his own house. Moreover, Sleugh told his girlfriend in untranslated English: "Didn't want to give it . . . fighting back you know how it is." The jury easily could have concluded on its own that this statement referenced Sleugh's act of robbing Muzac of the marijuana. Likewise, the jury easily could have understood Sleugh's other statements to mean what

Turner testified they meant. The government introduced other evidence against Sleugh as well, including cell site data and photographs of Sleugh with cash and marijuana. Accordingly, because Sleugh fails to establish the fourth plain error prong, we cannot conclude that the district court plainly erred when it admitted the testimony. *See United States v. Flores*, 802 F.3d 1028, 1037–40 (9th Cir. 2015) (holding that even where the prosecutor's statements were plainly erroneous, the defendant did not satisfy the third or fourth prongs of the plain error standard because, "in the context of the trial as a whole, it is unlikely that the jury was misled about the law or the facts").

3. Sleugh also argues that the district court erred when it gave a *Pinkerton* instruction for Counts 3 (Hobbs Act robbery), 4 (using or carrying a firearm during or in furtherance of a drug trafficking crime or crime of violence), and 5 (using a firearm during a drug trafficking crime or crime of violence and causing murder) because permitting *Pinkerton* liability for offenses that are not the objects of the charged conspiracy impermissibly lowers the mens rea required for those offenses and contradicts common law. Not so. *Pinkerton* liability is vicarious, which means that to convict Sleugh based on a *Pinkerton* theory, the jury must have found that a co-conspirator had the mens rea for the substantive offense. *See Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946). Although *Pinkerton* liability is subject to due process limits, *see United States v. Bingham*,

5

653 F.3d 983, 997 (9th Cir. 2011), those limits are not approached here, as a reasonable jury could have found that Sleugh played a major role in the conspiracy and that robbery, use of a firearm, and murder were reasonably foreseeable during a large-scale drug transaction. Sleugh's common law argument fails because, as he acknowledges, courts have long sustained *Pinkerton* liability in similar situations. *See United States v. Castaneda*, 9 F.3d 761, 768 (9th Cir. 1993) (holding that conspirators in a drug distribution network could be convicted for using a firearm under a *Pinkerton* theory), *overruled in part on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000).

4.     Sleugh argues that *Pinkerton* liability does not apply to 18 U.S.C. § 924(c) because Congress addressed in § 924(o) the penalties for a person who conspires to violate § 924(c). Sleugh concedes that we review this issue for plain error. *See United States v. Kaplan*, 836 F.3d 1199, 1216–17 (9th Cir. 2016); *United States v. Alferahin*, 433 F.3d 1148, 1154 & n.2 (9th Cir. 2006). *Pinkerton* liability for a § 924(c) charge and liability under § 924(o) are not necessarily inconsistent. They punish different conduct—*Pinkerton* liability in this circumstance applies when a co-conspirator actually violates § 924(c), and § 924(o) applies when conspirators conspire to violate § 924(c)—and it is reasonable for *Pinkerton* liability under § 924(c) to punish a conspirator more severely when a firearm is actually used than § 924(o) liability punishes a

6

conspirator who merely agrees to the use of a firearm. *Compare* 18 U.S.C. § 924(o) ("A person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years . . . ."), *with Castaneda*, 9 F.3d at 765 ("Under the rule first pronounced in [*Pinkerton*], each conspirator is liable for the criminal act of a co-conspirator if: 1) the substantive offense was committed in furtherance of the conspiracy, and 2) the offense could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement."). Consequently, the district court did not plainly err in instructing that *Pinkerton* liability could apply to § 924(c). The additional arguments that Sleugh makes for the first time in his reply brief concerning *Pinkerton* liability for § 924(c) are forfeited. *See Avila v. L.A. Police Dep't*, 758 F.3d 1096, 1101 (9th Cir. 2014) ("Arguments 'not raised clearly and distinctly in the opening brief' are waived." (quoting *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir 2009))).

5.     Finally, Sleugh argues that the jury instruction that "the crime alleged in Count Three, Robbery by Force, is a crime of violence" was plainly erroneous because Hobbs Act robbery is not categorically a crime of violence under § 924(c)'s elements clause. But we recently held that Hobbs Act robbery is categorically a crime of violence, *see United States v. Dominguez*, 954 F.3d 1251, 1261 (9th Cir. 2020) ("We reaffirm that Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)(3)(A) . . . ."), so the instruction was not erroneous, let

7

alone plainly so.

**AFFIRMED**.