**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FILED

JAN 4 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. JAMES DEAN CLOUD, Defendant-Appellant. | No.   22-30173 D.C. Nos. 1:19-cr-02032-SAB-1 1:19-cr-02032-SAB MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of Washington
Stanley A. Bastian, Chief District Judge, Presiding

Argued and Submitted December 8, 2023
Seattle, Washington

Before:  McKEOWN, N.R. SMITH, and SANCHEZ, Circuit Judges.

James Cloud appeals from the district court's denial of his post-trial motions

under Federal Rules of Criminal Procedure 25, 29, and 33.  We have jurisdiction

under 28 U.S.C. § 1291, and we affirm.

On June 8, 2019, a chaotic series of events transpired at a property located

on the Yakama Indian Reservation which left five victims—John C., Michelle S.,

---

        *        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Catherine E., Dennis O., and Tommy H.—shot to death. The Government charged Cloud with one count of second-degree murder for the murder of John; four counts of first-degree murder for the murders of the other four victims; and four counts of using, carrying, brandishing, possessing, and discharging a firearm in connection with the four first-degree murders.[1] After a trial before Judge Mendoza, a jury acquitted Cloud of murdering John, but convicted him on four counts of first-degree murder for the other victims. The jury also convicted Cloud of discharging a firearm in connection with Tommy's and Dennis's murders, but acquitted him of doing so in the two women's murders.

After the verdict, Cloud moved for acquittal and a new trial under Rules 29 and 33. Before Judge Mendoza heard the post-trial motions, Cloud's case was transferred to Chief Judge Bastian. Cloud argued that this transfer violated Rule 25(b)(1) and filed an additional motion to transfer the case back to Judge Mendoza or alternatively grant a new trial under Rule 25(b)(2). Chief Judge Bastian denied all three of Cloud's post-trial motions.

Cloud first challenges the transfer. Rule 25(b)(1) provides: "After a verdict or finding of guilty, any judge regularly sitting in or assigned to a court may complete the court's duties if the judge who presided at trial cannot perform those

---

[1] Cloud was charged with (and convicted of) various other offenses. He appeals only the murder convictions.

duties because of absence, death, sickness, or other disability." Under Rule 25(b)(2), "[t]he successor judge may grant a new trial if satisfied that: (A) a judge other than the one who presided at the trial cannot perform the post-trial duties; or (B) a new trial is necessary for some other reason."

Chief Judge Bastian acknowledged that he was not provided a reason for the transfer, but concluded that the trial judge was "absent" under Rule 25(b)(1). The record does not reflect why the trial judge was unavailable. We need not decide whether the transfer was in error, because any error was harmless. *See United States v. Harris*, 679 F.3d 1179, 1180–83 (9th Cir. 2012).

The district court expressly stated that it had reviewed the entire record and, having done so, was confident in fulfilling post-trial duties. *See United States v. Spinney*, 795 F.2d 1410, 1413 (9th Cir. 1986) ("We have held that there is no abuse of discretion [under Rule 25(b)] when the [successor] judge is familiar with the case and uses informed discretion . . . ."). Chief Judge Bastian "demonstrated his familiarity with this case" by meticulously detailing the evidence presented at trial and recounting at length the testimony of the key witnesses. *Id.* In doing so, he acknowledged discrepancies in the various witnesses' accounts and underscored the ways in which the jury appeared to credit some parts of their testimonies while apparently disregarding others.

Cloud acknowledges that Chief Judge Bastian studiously reviewed the

3

record, but contends that he was prejudiced by the transfer primarily because the Government's case—and thus, the jury's verdict—relied on testimony from witnesses who were to various degrees not credible. Any suggestion of prejudice on this ground is unavailing as to Cloud's motion for acquittal, however, because "it is not the district court's function to determine witness credibility when ruling on a Rule 29 motion." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002). Additionally, Judge Mendoza denied Cloud's motions for acquittal made during trial.

As for Cloud's Rule 33 motion, we have held that a successor judge can resolve credibility issues on a defendant's motion for a new trial, even without seeing the witnesses testify. *See Carbo v. United States*, 314 F.2d 718, 749–50 (9th Cir. 1963) (refusing to "apprehend that where credibility of government witnesses is a serious issue it must follow ipso facto that a new trial must be had"). Credibility determinations involve more than an observation of witness demeanor, encompassing instead "the over-all evaluation of testimony in the light of its rationality or internal consistency and the manner in which it hangs together with other evidence." *Id.* at 749. Indeed, Chief Judge Bastian fully appreciated the fact that there was conflicting testimony, as did the jury. Cloud has not demonstrated prejudice with respect to the transfer for post-trial motions.

Turning then to the merits, we review de novo a "denial of a Rule 29 motion

for a judgment of acquittal." *United States v. Gagarin*, 950 F.3d 596, 602 (9th Cir. 2020). "In determining whether evidence was insufficient to sustain a conviction, we consider whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc)). Under this standard, we "presume that the jury resolved any evidentiary conflicts in the government's favor." *United States v. Goldtooth*, 754 F.3d 763, 768 (9th Cir. 2014).

Sufficient evidence existed to support all four first-degree murder convictions. Two of the convictions, for the killings of Michelle and Catherine, apparently rested on an aiding-and-abetting theory. Though no witness saw the murders, testimony established that Cloud and his cousin, Donovan, were the only people (aside from the victims) present when the murders occurred.

The district court determined that a logical chain of inferences suggested that John was shot first, and the two women were then shot to eliminate witnesses. Catherine was shot in her truck while Michelle was likely shot near the truck, which suggests the two women may have been attempting to get away. Catherine and Michelle were also each shot directly behind the ear, which is "predictably fatal." *United States v. Begay*, 673 F.3d 1038, 1044 (9th Cir. 2011) (en banc). And a witness observed that Cloud was part of an argument with Donovan and

5

John that may have been the catalyst for John's murder—and by extension, the women's murders. Further, Cloud entered John's property armed, which supports lethal intent. These facts provide sufficient evidence for a reasonable juror to find premeditation and intent beyond a reasonable doubt. *See id.* at 1043 (explaining that "[p]remeditation can be proved by circumstantial evidence," including the defendant's carrying of the murder weapon to the scene, the manner and nature of the killing, and motive).

Sufficient evidence also permitted a reasonable juror to infer that Cloud aided Donovan in the killings. Testimony established that when Cloud entered the property in the moments before the murders, he was carrying the gun that was likely used to murder Catherine and Michelle. Viewing the evidence in the light most favorable to the Government—as we must—the jury could reasonably infer that Cloud lent the gun to Donovan, or otherwise somehow assisted in the killings; after all, *only* Cloud and Donovan were present when the victims were shot. "Circumstantial evidence may support a conviction as an aider and abetter," and the evidence here supports more than "'mere casual association with conspiring people.'" *United States v. Corona-Verbera*, 509 F.3d 1105, 1119 (9th Cir. 2007) (quoting *United States v. Ramirez-Robles*, 386 F.3d 1234, 1241 (9th Cir. 2004)). On this record, we cannot say that "*any* rational trier of fact" would be unable to "find the essential elements" of aiding and abetting first-degree murder "beyond a

6

reasonable doubt." *Nevils*, 598 F.3d at 1164–65.

As for the murders of the two men—Dennis and Tommy—a witness testified that Cloud shot Tommy, and that Cloud was holding the likely murder weapon in the moments before both men were shot. Another witness testified that Cloud confessed to shooting a victim in a manner consistent with Dennis's injuries. And a witness's description of the shooter's attire helped rule out alternative suspects. In any event, a reasonable juror could conclude beyond a reasonable doubt that Cloud shot the two men.

Cloud's carrying of the likely murder weapon to the scene in the moments before Tommy and Dennis were shot provides "strong evidence of premeditation," along with the manner in which the killings took place, including that both men were shot in the head, which is predictably fatal. *Begay*, 673 F.3d at 1044. These facts are sufficient to warrant a reasonable juror in concluding beyond a reasonable doubt that Cloud acted with premeditation and intent to kill, thus justifying the first-degree murder convictions.

Finally, Cloud challenges the district court's denial of a new trial. Rule 33(a) provides that a court may, upon the defendant's motion, "vacate any judgment and grant a new trial if the interest of justice so requires." We review for abuse of discretion the district court's denial of a new trial. *See United States v. Alston*, 974 F.2d 1206, 1212 (9th Cir. 1992).

7

A court's power to grant a new trial under Rule 33 is "much broader" as compared to Rule 29, insofar as the court "need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *Id.* at 1211 (internal quotation omitted) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). That said, a new trial "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (simplified).

Cloud's arguments that the district court erred in denying a new trial center primarily on witness credibility issues and perceived evidentiary weaknesses, which he contends—when properly weighed—compel the conclusion that the verdict was against the weight of the evidence. We disagree.

The district court carefully recounted, acknowledged, and evaluated the evidentiary conflicts and weaknesses raised by Cloud. We have also considered Cloud's arguments including, among other claims, whether the shooter's attire and physical appearance in fact incriminated him, uncertainty as to the number and types of guns present and who wielded the weapons, the failure of a witness to identify Cloud in a photo lineup, and that Cloud may have initially attempted to dissuade his cousin Donovan from shooting anyone. The jury considered all this testimony and more. These claimed evidentiary shortcomings are not so

fundamental as to convince us that a "serious miscarriage of justice may have occurred." *Alston*, 974 F.2d at 1211 (quoting *Lincoln*, 630 F.2d at 1319).

The district court also evaluated various witness credibility issues, and underscored the ways in which the jury parsed the witness testimony. To that point, the witness credibility issues that Cloud points out were aired at trial; the jury was instructed on credibility issues, and Cloud vigorously challenged the credibility of the Government's witnesses on cross-examination and in argument.

While a district court may evaluate witness credibility on a new trial motion, Rule 33 does not give a court license to wholly usurp the jury's role, insofar as it should only grant a new trial in exceptional circumstances where the evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice may have occurred. *See Pimentel*, 654 F.2d at 545; *Alston*, 974 F.2d at 1211–12. On this record, the district court did not abuse its discretion in declining to grant Cloud a new trial.

**AFFIRMED.**